In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-02-489 CV


____________________



JAMES DAVID SULLIVAN, Appellant



V.



FRED SMITH d/b/a FRED SMITH FORESTRY, Appellee






On Appeal from the 217th District Court


Angelina County, Texas


Trial Cause No. 34,967-02-02






OPINION


 Fred Smith, a forester doing business as Fred Smith Forestry, sued James David
Sullivan to recover a sales commission on an attempted sale of timber on 215 acres of land
that Sullivan co-owned with other family members. The jury found that Sullivan breached
the contract with Smith, and found damages in the amount of $26,765.97. The trial court
entered judgment on the verdict and also awarded attorney fees in the amount of
$6,759.00. The sole issue presented on appeal contends there is no evidence to support
the jury's answer to Question No. 1, which asked, "Did James D. Sullivan fail to comply
with the agreement between James D. Sullivan and Fred Smith?" 

 In reviewing a no evidence claim, we must consider only the evidence and the
inferences tending to support the finding and disregard all evidence and inferences to the
contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). If more than a scintilla of
evidence exists, it is legally sufficient. Browning-Ferris, Inc. v. Reyna, 865 S.W.2d 925,
928 (Tex. 1993). More than a scintilla of evidence exists where the evidence supporting
the finding, as a whole, rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497,
499 (Tex. 1995)(quoting Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex.
1994)). 

 The elements of a cause of action for breach of contract are: 1) the existence of a
valid contract; 2) that the plaintiff performed or tendered performance; 3) that the
defendant breached the contract; and 4) that the plaintiff was damaged as a result of the
breach. Southwell v. University of the Incarnate Word, 974 S.W.2d 351, 355 (Tex. App.--San Antonio 1998, pet. denied). Courts have recognized three general situations in which
an agent may recover on a commission contract: 1) by procuring from a purchaser a valid
enforceable contract on the terms proposed by the seller; 2) by producing a purchaser to
whom a sale or exchange is in fact made on terms satisfactory to the seller; or 3) by
producing a purchaser who is ready, able, and willing to buy or exchange on terms
specified in the contract of employment, and who offers to do so. Fuess v. Mueller, 630
S.W.2d 715, 717 (Tex. App.--Houston [1st Dist.] 1982, no writ); Anderson-Berney Bldg.
Co. v. Swan, 133 S.W.2d 269 (Tex. Civ. App.--Fort Worth 1939, writ dism'd judgm't
cor.). 

 James David Sullivan held a one-eighth interest in 215 acres of timbered land that
he owned with his brothers, William and Wayne, his sister Frances Idoux, and his cousin,
Jane Molpus. Fred Smith negotiated different agreements with each of the co-tenants, for
marking timber on the land and soliciting bids for sale of the marked timber. The entire
text of Smith's contract with Sullivan states:

 This letter is in reference to your 215 acre tract located in Angelina County,
Texas. I have recently discussed the options in my proposal letter of 12-22-99 with Mr. & Mrs. Moltus [sic] and they prefer to proceed with my second
option stated in that letter.


 That plan was to mark most of the pine to a 14" stump, while also marking
poor quality pine and hardwood pulpwood that should be removed in any
harvest. I would also mark for sale about 1/3 of the hardwood sawtimber. 
This type of harvest would leave more pine for the future plus 2/3 of the
hardwood sawtimber trees that are desirable for development purposes. This
sale should generate between $460-$490,000 in income. 


 As in any of my sales the landowner has the right to reject any or all bids. 
However, if the sale does bring the expected amount then the high bidder
will expect the sale to go through. My usual fee for a successful timber sale
is 7% of the high bid. I handle all aspects of the sale from marking the
timber to making sure the contract protects your tract, including logging
inspections to make sure it is done correctly!


 If you are in agreement, I can proceed with marking the timber. I would
only need your signature below authorizing me to begin the work. Please
return a copy to my office.


 Smith spent a month and a half marking the timber on the tract and then sending out
an announcement of the sale. On March 12, 2000, a letter from Sullivan questioned the
amount of income that would be generated by the sale. After that, Smith contacted
Sullivan through his attorney, Stephen Fort. Smith sent out bid proposals, which divided
the land into two tracts, and which expressly reserved the sellers' right to reject all bids.
Smith tallied the bids on April 6, 2000. Temple-Inland made the high bid on one tract and
Ellis Timber made the high bid on the other tract. Smith sent copies of the bid list to his
clients. The only information on the list was the amount of the timber and the amount of
the bids; no other contractual terms were expressed on the document transmitted to
Sullivan. Wayne Sullivan, William Sullivan, Frances Idoux and Jane Molpus accepted the
high bids, which totaled $382,371. After one month, James Sullivan also accepted the
high bids. Sullivan's attorney also wrote to Smith and asked Smith to explain why they
were not getting the previously anticipated $450,000 for the timber. Smith explained that
the yield was smaller because he had marked less timber. Instead of marking trunks
starting at 14" diameter, Smith marked trunks 16" and up. Although Smith had written
contracts "saying different," the owners "accepted . . . the price at 383,000 because they
wanted to sell their timber, and they wanted the money from the sale." Smith testified that
no sale was ever completed. In Smith's words:

 Well. That [the deed passing and the money passing] would constitute
the finality of it. But, you know, I've done 325 timber sales, and we've
never lost one because of a problem with the contract and all. So I consider
a successful sale when we get the amount of money that all the landowners
accept. From that point there should be nothing preventing that sale from
concluding. And in my past 320 timber sales that I've done, an argument
over the contract has never caused that sale to not be successful. We've
always closed all of them. This is the first time this has ever happened in
my 20 years in the business. 

 

 Asked what caused the deal to fall through, Smith explained that Robert Wade, the
attorney who represented James Sullivan's siblings in the transaction, drafted a timber deed
that included language that neither Ellis nor Temple would accept. The clause at issue
stated, "Upon completion of logging operations the surface will be returned to a condition
which is reasonably aesthetically acceptable to Grantors." James signed the timber deeds
drafted by Robert Wade but did not sign timber deeds that Smith and Temple drafted and
that Smith forwarded to Sullivan's attorneys. Although they were not produced at trial,
Smith testified that the language in those deeds was standard for the industry. Smith
forwarded the Wade deeds to the timber companies, who withdrew their offers because
they would not accept a deed that contained the controversial clause. None of the other
ten bidders would accept such a deed, either. No sale occurred, and the property was
subsequently partitioned. 

 Smith's contract with Sullivan indicated that Smith would be paid seven percent of
the high bid for a successful timber sale. First, Smith produced potential buyers for the
timber, but the sale did not occur and no consideration was exchanged. Therefore, Smith
could not recover his fee under the express terms of his contract with James Sullivan,
which provided for payment upon a successful sale. Second, no binding contract of sale
was ever formed between Sullivan and the timber companies. The elements required for
the formation of a binding contract are: 1) an offer; 2) acceptance in strict compliance with
the terms of the offer; 3) a meeting of the minds as to subject matter and essential terms; 
4) communication of each party's consent to the terms of the agreement; and 5) execution
and delivery of the contract with the intent that it be mutual and binding. McCulley Fine
Arts Gallery, Inc. v. "X" Partners, 860 S.W.2d 473, 477 (Tex. App.--El Paso 1993, no
writ). There is no evidence in the record of written acceptance of Temple's and Ellis's
bids in a manner that would make the timber sale enforceable through specific
performance. Both companies withdrew their offers when presented with the seller's terms
of sale. Therefore, Smith did not procure a valid, enforceable contract for which he could
claim a commission. Third, there is no evidence that Temple and Ellis, or any of the other
bidders for the timber, were ever ready, willing, and able to buy the property on the terms
stated in the commission contract or upon other terms acceptable to the seller. Smith
varied from the terms of the Sullivan contract when he marked the timber. Although there
is evidence that Sullivan was willing to accept the bids made for the timber actually marked
by Smith, the transaction involved more than the sale of a product for a certain price. As
demonstrated by the timber deeds in the record, the transaction also involved logging
operations and reconditioning the surface. Although Sullivan agreed on the price offered
for the timber, he did not agree to the other terms of the offer, nor did the lumber
companies agree to his terms for the conveyance. Therefore, there is no evidence that
Smith performed under the Sullivan contract so that he would be entitled to a commission
for an aborted sale. Furthermore, there is no evidence of breach by James Sullivan of the
contract with Smith, which contemplated that the timber contract would protect the tract
of land and which did not restrict the conditions Sullivan could place on the sale or in the
timber deeds. Nor did that contract require Sullivan to sign the deeds prepared by Smith
and by Temple regardless of the terms therein expressed. Since Sullivan was not bound
to sign any timber deed presented to him by Smith regardless of its terms, he did not
breach the commission contract by instead signing timber deeds that contained language
unacceptable to the timber companies.

 No evidence supports the jury's finding that the appellant failed to comply with his
agreement with the appellee. Issue one is sustained. We reverse the judgment of the trial
court and render judgment that Fred Smith d/b/a Fred Smith Forestry take nothing of his
suit against James David Sullivan. The appellee's request for assessment of damages for
filing a frivolous appeal is denied. 

 REVERSED AND RENDERED.



 ___________________________

 STEVE MCKEITHEN

 Chief Justice



Submitted on May 22, 2003

Opinion Delivered June 5, 2003


Before McKeithen, C.J., Burgess and Gaultney, JJ.