In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-150 CV


____________________



JOHN ROLLINS, Appellant



V.



UNIVERSAL COIN & BULLION, LTD., Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. A-176598






MEMORANDUM OPINION


 Appellant John Rollins appeals an order granting a temporary injunction in favor of
appellee Universal Coin & Bullion, Ltd. ("UCB"). See Tex. Civ. Prac. & Rem. Code Ann.
§ 51.014(a)(4) (Vernon Supp. 2006). The trial court enjoined and restrained Rollins, a
former employee of UCB, "together with his agents, servants, and attorneys, (including Bill
Lee Voss, Attorney at Law . . . ) and those persons in active concert or participation with him
who receive actual notice of this order by personal service or otherwise" from "directly (or
indirectly through a third party) contacting or communicating, targeting, initiating or
soliciting any individual who is or was a customer of UCB and/or using any customer name,
or customer address lists obtained as a result of Rollins'[s] employment with UCB." In three
issues, Rollins complains the trial court abused its discretion by ordering a temporary
injunction against him because Universal Coin & Bullion failed to meet its burden of proof
for a temporary injunction, failed to join an indispensable party, and because the temporary
injunction order lacks the required specificity. Because we hold the trial court did not abuse
its discretion, we affirm.

 UCB is in the business of selling coins to the general public and coin dealers, and
Rollins worked as a salesperson for the company. As a salesperson, Rollins kept a "load
book" which included a list of customer names and contact information. Rollins signed a
"Confidential Services, Trade Secret and Employment Agreement" that included the
following provisions:

 6. Confidentiality of Customer Records and Information. . . .
EMPLOYEE agrees that he will not disclose at any time, either during his
association with EMPLOYER, or at any time after EMPLOYEE's termination
of employment with EMPLOYER, whether orally or in writing, in any
manner, directly or indirectly, to any other person or firm (except to other
employees of EMPLOYER) any knowledge or information which he acquires
in connection with said information and association for his own benefit or that
of any other person or entity except with the express written consent of
EMPLOYER. Further, EMPLOYEE agrees that he shall not after termination
of employment, make contact with or attempt to contact directly or indirectly
any past or existing customer, supplier, consultant, or master list provider of
EMPLOYER, without EMPLOYER's express written consent.


 7. Trade Secrets. During the term of this Agreement, EMPLOYEE will
have access to and become familiar with various trade secrets. The term "trade
secrets" includes devices, customer lists, secret inventions, processes,
compilations of information, records, skills and specifications that are
developed and/or owned by EMPLOYER and that are regularly used in the
operation of the business of EMPLOYER, including, without limitation, the
information described in paragraph 6., above. . . . 


 EMPLOYEE recognizes that the trade secrets, described above, and the
compilations of information and techniques used in EMPLOYER's business,
as described above, give it an advantage over its competitors. EMPLOYEE
shall not duplicate, retain, use for his own account, or disclose any trade
secrets of EMPLOYER, directly or indirectly, or use them in any way, either
during or at any time after termination of EMPLOYEE's employment with
EMPLOYER, except as required in the course of his employment under this
agreement. . . . 

UCB terminated Rollins's employment after approximately four years. Sometime after his
discharge, Rollins provided Bill Voss, an attorney, with a list of customer information he
obtained as a result of his employment with UCB. Voss, serving as legal counsel for a UCB
customer, sent letters to several customers on the list and informed them they could be "key"
witnesses in a pending case against UCB. 

 UCB filed suit against Rollins for breach of contract and misappropriation and alleged
that by providing Voss with a list of UCB's customers, Rollins breached his confidentiality
agreement and misappropriated UCB's confidential and proprietary information. UCB also
sought a temporary injunction against Rollins to enjoin him from engaging in various acts
relating to UCB's confidential customer information. (1) After a hearing, the trial court entered
a temporary injunction against Rollins "together with his agents, servants, and attorneys,
(including Bill Lee Voss, Attorney at Law . . .)[.]" The injunction prohibited them from
"directly (or indirectly through a third party) contacting or communicating, targeting,
initiating or soliciting any individual who is or was a customer of UCB and/or using any
customer name, or customer address lists obtained as a result of Rollins'[s] employment with
UCB." Rollins filed this accelerated interlocutory appeal. 

 Because an appeal of an order granting a temporary injunction is an appeal from an
interlocutory order, the merits of the underlying case are not presented for appellate review. 
Davis v. Huey, 571 S.W.2d 859, 861 (Tex. 1978). We review a trial court's grant of a
temporary injunction for an abuse of discretion. Butnaru v. Ford Motor Co., 84 S.W.3d 198,
204 (Tex. 2002). We should reverse an order granting injunctive relief only if the trial court
abused its discretion and we must not substitute our judgment for that of the trial court unless
the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. 
Id. We review the evidence in the light most favorable to the trial court's order and indulge
every reasonable inference in its favor. NMTC Corp. v. Conarroe, 99 S.W.3d 865, 868 (Tex.
App.--Beaumont 2003, no pet.). "The trial court does not abuse its discretion if some
evidence reasonably supports the trial court's decision." Butnaru, 84 S.W.3d at 211. Where,
as here, no findings of fact or conclusions of law were filed, we must uphold the trial court's
judgment on any legal theory supported by the record. Davis, 571 S.W.2d at 862. 

 While a temporary injunction's purpose is to preserve the status quo of the litigation's
subject matter pending a trial on the merits, it is also an extraordinary remedy that does not
issue as a matter of right. Butnaru, 84 S.W.3d at 204. "To obtain a temporary injunction,
the applicant must plead and prove three specific elements: (1) a cause of action against the
defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and
irreparable injury in the interim." Id. 

 In his first issue, Rollins contends UCB failed to prove the elements required to obtain
a temporary injunction. Rollins argues UCB failed to show imminent harm because UCB's
two witnesses, Michael Fuljenz and Thomas Novak, testified to having only fears and
apprehensions regarding the possible effects of Rollins's use of the customer lists, and
Fuljenz failed to offer the names of the customers who have discontinued doing business
with UCB. 

 We first note that our review of the evidence is not limited to the testimony of UCB's
witnesses. There is evidence in the record that before a trial on the merits can be held,
UCB's relations with its customers will be harmed by Rollins's and Voss's use of UCB's
customer lists. Voss testified Rollins provided him with a handwritten list of names of
individuals that either had a connection with UCB and/or were Rollins's clients when he
worked for UCB. Voss also testified that the handwritten list did not contain addresses for
all of the customers listed, and he sent letters to the individuals he had contact information
on. Voss explained he sent letters to over thirty customers on the list. Seven letters were
entered into evidence and read in part as follows:

 I represent a client who has made certain investments (coin purchases)
with a company based in Beaumont, Texas by the name of Universal Coin
and Bullion. We are investigating various claims of fraud and representations
made by Universal to its investors that may have been false and misleading.

 

 I am writing to you because you may have knowledge or information
regarding my client's case and could be a potential witness. In addition, it is
our understanding you may not be satisfied with your own investment(s) or
you may have been given fraudulent advice in order to induce you to purchase
said investments.

 

 Again, as a fellow investor, you could be a key witness for our client in
her case and you could help her in her attempt to right the wrong she endured
due to serious misrepresentations by Universal. Thus, I would like to talk to
you about her case.

The record indicates that Voss received phone calls from some of the customers he contacted,
and he represents one of these customers in a lawsuit against UCB. (2) 

 Fuljenz, president and an owner of UCB, testified that some of the customers who
received letters from Voss called UCB and complained about UCB's security procedures
regarding proprietary information. Thomas Novak, UCB's sales manager, testified that he
spoke with several customers who may have received a letter from Voss, and at least two of
them have informed him they will no longer conduct business with UCB. The record
indicates that at the time of the hearing, UCB had communicated with other customers who
may have received a letter from Voss and UCB was still waiting for those customers to
provide it with copies of the letters. Thus, a review of the evidence reveals the trial court
could have reasonably concluded that because Voss is still in possession of the customer list
and may not have contacted all of the customers on the list, Voss may attempt to contact the
remaining customers at some time before a trial on the merits can be held. The court could
have further concluded that because UCB provided evidence of at least two customers who
have stopped doing business with UCB and UCB is still waiting to hear from other 
customers whom Voss may have contacted, UCB has suffered imminent harm that is "actual
and ongoing." NMTC Corp., 99 S.W.3d at 869.

 Rollins next argues UCB failed to prove its probable right to recovery because UCB
did not offer any testimony regarding its likelihood of success on the misappropriation and
breach of contract causes of action. A probable right of recovery is proven by "alleging a
cause of action and presenting evidence which tends to sustain it." Miller Paper Co. v.
Roberts Paper Co., 901 S.W.2d 593, 597 (Tex. App.--Amarillo 1995, no writ) (citing Transp.
Co. of Tex. v. Robertson Transps., Inc., 152 Tex. 551, 261 S.W.2d 549, 552 (1953)). A party
seeking relief is not required to establish that he will ultimately prevail. Id. (citing Transport
Co., 261 S.W.2d at 552). 

 In its application for injunctive relief, UCB alleged Rollins breached his agreement
with UCB and misappropriated UCB's confidential information and trade secrets. (3) The
evidence UCB presented in support of both causes of action indicates that Rollins signed the
confidentiality agreement wherein Rollins agreed that he would not disclose any confidential
or proprietary information acquired as a salesperson at UCB. Rollins also agreed not to
"duplicate, retain, use for his own account, or disclose any trade secrets of [UCB], directly
or indirectly, or use them in any way, either during or at any time after termination of
[Rollins's] employment with [UCB], except as required in the course of his employment
under this agreement." "Trade secrets," as defined in the agreement, included customer
lists. (4) UCB presented evidence that Rollins provided Voss with a handwritten list of the
names and contact information on some of the current and/or former UCB customers. UCB
provided testimony indicating that as a result of Rollins's use of its customer lists, some
customers had stopped doing business with the company. This evidence tends to sustain
UCB's breach of contract and misappropriation causes of action. (5) See id. 

 Rollins next contends UCB failed to prove it suffered an irreparable injury, and the
evidence shows UCB has an adequate remedy at law. These issues are intertwined under
Texas law. Wright v. Sports Supply Group, Inc., 137 S.W.3d 289, 294 (Tex. App.--Beaumont 2004, no pet.). "An injury is irreparable if the injured party cannot be adequately
compensated in damages or if the damages cannot be measured by any certain pecuniary
standard." Butnaru, 84 S.W.3d at 204. Damages are inadequate, so as to support a
temporary injunction, if they are difficult to calculate. Mabrey v. SandStream, Inc., 124
S.W.3d 302, 318-19 (Tex. App.--Fort Worth 2003, no pet.) (citing K & G Oil Tool & Serv.
Co. v. G & G Fishing Tool Serv., 158 Tex. 594, 314 S.W.2d 782, 791 (1958)).

 Evidence of irreparable harm and an inadequate remedy at law is found in the
testimony of Fuljenz and Novak. Fuljenz explained the effects of a misuse of confidential
customer lists as follows: "Anytime a competitor or someone else gets a hold of [a] list of
your clients, you can have a certain percentage of those clients quit doing or have a
diminishment in the amount of business they do." Fuljenz noted that because the letters Voss
sent to UCB's customers did not provide the customers with a positive representation of the
company, the letters "can only have a negative effect on some of the clients." Fuljenz
expressed his concern that Rollins could distribute another customer list, send additional
letters to these customers, and /or "brainstorm" on ways to reach the customers Rollins did
not have addresses for. Novak's testimony indicates that UCB has communicated with
several customers in an effort to ascertain which customers received Voss's letters and UCB
is still waiting for customer responses. Novak's testimony also indicates that he believes the
letters may have impacted the customers that have not responded, and it is difficult to
determine whether these customers have not responded because they have been impacted by
the letters. A review of the evidence reveals that because UCB does not know how many
customers have received letters or whether letters are still being sent, UCB has no way to
determine whether its customers will be affected by the letters and may discontinue doing
business with the company. Thus, the trial court could have properly found that UCB has
suffered an irreparable injury and there is no adequate remedy at law, because its damages
are difficult to calculate. We hold the trial court did not abuse its discretion in granting the
temporary injunction. (6) Issue one is overruled.

 In his second issue, Rollins contends the temporary injunction is void because UCB
failed to join Voss as an indispensable party to the injunction proceeding in accordance with
Tex. R. Civ. P. 39. A judgment is void only when it is clear that the court rendering the
judgment had no jurisdiction over the parties or subject matter, no jurisdiction to render
judgment, or no capacity to act as a court. Browning v. Packe, 698 S.W.2d 362, 363 (Tex.
1985). "A failure to join 'indispensable' parties does not render a judgment void; there could
rarely exist a party who is so indispensable that his absence would deprive the court of
jurisdiction to adjudicate between the parties who are before the court." Id. We need not
decide whether Voss is an indispensable party because under Browning, the trial court's
injunction order cannot be rendered void for UCB's failure to join an indispensable party. 
See id. Issue two is overruled.

 In issue three, Rollins argues the court's injunction order is overly broad and lacks
specificity because it does not specify which customers Rollins cannot contact. Courts have
held that an injunction order will not be found to be overly broad if the order enjoins a former
employee from soliciting its former employer's customers without specifically stating the
customers' names. See Safeguard Bus. Sys., Inc. v. Schaffer, 822 S.W.2d 640, 644 (Tex.
App.--Dallas 1991, no writ); see also Bertotti v. C.E. Shepherd Co., 752 S.W.2d 648, 656
(Tex. App.--Houston [14th Dist.] 1988, no writ). "Where secret customer information was
one of the main assets sought to be protected, the trial court would defeat that purpose by
requiring the public disclosure of such information." Safeguard Bus. Sys., 822 S.W.2d at
644. It is not "unreasonable to assume that he who is sought to be enjoined is sufficiently
familiar with the employer's business and its customers to avoid violating the injunction." 
Id.

 The record clearly shows that Rollins had access to confidential customer information
and distributed this information to Voss. Thus, although the trial court's order did not
specifically list the names of the customers Rollins was prohibited from contacting, the court
could have reasonably assumed Rollins was sufficiently familiar with UCB's customers and
the list he provided to Voss to avoid violating the injunction. See id. The court could have
further declined to include the customers' names in the order to protect UCB's confidential
customer information. See id. Issue three is overruled. The trial court's judgment is
affirmed.

 AFFIRMED.

 __________________________________

 CHARLES KREGER

 Justice

Submitted on July 6, 2006

Opinion Delivered October 12, 2006


Before McKeithen, C.J., Kreger and Horton, JJ.
1. UCB also brought suit against Shannon Smith, another former employee and sought a
temporary restraining order and injunction against both defendants. The trial court granted the
temporary restraining order as to both defendants and granted the temporary injunction only as to
Rollins. 
2. The record indicates that Voss may not have initiated the contact with the former
customer that retained him as legal counsel. Voss testified that Rollins contacted one of his
former customers and advised her that she may need a lawyer. The customer called Voss, and
Voss became her legal counsel. 
3. The elements of a breach of contract cause of action are: "1) the existence of a valid
contract; 2) that the plaintiff performed or tendered performance; 3) that the defendant breached
the contract; and 4) that the plaintiff was damaged as a result of the breach." Sullivan v. Smith,
110 S.W.3d 545, 546 (Tex. App.--Beaumont 2003, no pet.). The elements of a misappropriation
cause of action are: "(1) existence of a trade secret; (2) breach of a confidential relationship or
improper discovery of a trade secret; (3) use of the trade secret; and (4) damages." Trilogy
Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex. App.--Austin 2004, pet.
denied).
4. Rollins does not challenge UCB's characterization of the customer lists as trade secrets. 
5. Rollins, who apparently characterizes the confidentiality agreement as a non-compete
agreement, (reply 3,6) argues the non-compete agreement is unenforceable because it is not
ancillary to, or part of, an otherwise enforceable agreement pursuant to Tex. Bus. Com. Code.
Ann. § 15.50 (a) (Vernon 2002). However, UCB has not alleged that Rollins has attempted to
compete against UCB, and the trial court's injunction, although referencing the covenant not to
compete, was based on the confidentiality and trade secrets provisions in the agreement rather
than the non-competition provisions. An agreement not to disclose or use confidential
information may be enforceable even if a related covenant not to compete is not. Tom James of
Dallas, Inc. v. Cobb, 109 S.W.3d 877, 888 (Tex. App.--Dallas 2003, no pet.). However, we need
not determine whether the covenant not to compete is enforceable because this issue was not
before the trial court at the temporary injunction hearing. See id. at 885. 
6. Moreover, Rollins contractually agreed that it would be difficult to compute the
damages as a result of any disclosure and that UCB would be without adequate legal remedy
should Rollins violate any of the restrictive covenants in the agreement.