COURT
OF APPEALS

SECOND DISTRICT
OF TEXAS

FORT WORTH

 

 

NO. 2-06-301-CV

 

 

MUENSTER
HOSPITAL DISTRICT                                            APPELLANT

 

                                                   V.

 

BONNIE
CARTER, M.D., AND                                                 APPELLEES

KARLA DAVIDSON-COX, M.D. 

                                              ------------

 

             FROM THE 235TH
DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                       OPINION

 

                                              ------------

 

                                       I. 
Introduction








The primary issue we address in this accelerated,
interlocutory appeal of the trial court=s order
denying Appellant Muenster Hospital District=s plea
to the jurisdiction is whether the retaliatory discharge claims of Appellees
Dr. Bonnie Carter, M.D. and Dr. Karla Davidson-Cox, M.D. are germane to,
connected with, and properly defensive to the breach of contract claims
affirmatively seeking monetary relief that are asserted by the Hospital
District against the doctors.  Because we
hold that the doctors= retaliatory discharge claims
are germane to, connected with, and properly defensive to the Hospital District=s breach
of contract claims, we will affirm the trial court=s denial
of the Hospital District=s plea to the jurisdiction.  We will sustain the Hospital District=s
complaint that any waiver of immunity is limited to the damages that it
affirmatively seeks in its breach of contract claims.  Accordingly, we will modify the trial court=s order
denying the Hospital District=s plea
to the jurisdiction so that it reflects such a limited waiver of sovereign
immunity by the Hospital District.

                   II. 
Factual and Procedural Background

In 2003, the doctors entered into written
agreements with the Hospital District. 
Among other imposed requirements, the agreements provided that the
doctors would conduct full-time medical practices at the hospital and at a
separate health clinic, participate in the Hospital District=s call
schedules, and maintain residences within fifteen minutes of the hospital.  In return, the Hospital District guaranteed
each doctor a base income of $10,000 per month and an annual income of
$120,000.  The Hospital District also
agreed to provide the doctors a relocation allowance and a practice
commencement allowance and to make payments toward the doctors=
professional liability insurance premiums and student loans. 








Article VI of the agreements, titled AReimbursement
and Termination,@ outlines the circumstances
under which each party could terminate the agreement and explains when the
doctors would be required to reimburse the Hospital District for payments and
allowances they had received.  While
maintaining a full-time practice and otherwise complying with the agreement,
Dr. Carter reported to the Hospital District=s board
that she suspected patient neglect and Medicare fraud by a particular physician
employed by the Hospital District.  While
maintaining a full-time medical practice and otherwise complying with the
agreement, Dr. Davidson-Cox also complained that she suspected neglect by the
same physician.  One day after Dr. Carter
and Dr. Davidson-Cox complained to the hospital administrator, they received
written notification from the administrator that they were the subject of an
investigation for disruptive behavior. 
Dr. Carter and Dr. Davidson-Cox assert that three months later, the
Hospital District=s Chief Financial Officer filed
a groundless report of suicidal behavior by Dr. Carter with the Texas Medical
Association.








Dr. Carter and Dr. Davidson-Cox subsequently
tendered letters of resignation.[1]  Approximately one week after receiving the
letters of resignation, the Hospital District sent demand letters to Dr. Carter
and Dr. Davidson-Cox seeking reimbursement under section 6.1 of the agreements
of all payments and allowances that the Hospital District had made to or on behalf
of the doctors, $40,500.19 from Dr. Carter and $196,464.69 from Dr.
Davidson-Cox.  Neither Dr. Carter nor Dr.
Davidson-Cox responded to the demand letters. 
Instead, they filed suit against the Hospital District alleging
retaliatory discharge and breach of contract and seeking a declaratory
judgment.

The Hospital District filed a plea to the
jurisdiction, a general denial, and a counterclaim for breach of contract.  The Hospital District alleged that Dr. Carter
and Dr. Davidson-Cox had breached the agreements by resigning their staff
privileges and that, accordingly, the Hospital District was entitled to
reimbursement for the payments and allowances made to the doctors.  In its plea to the jurisdiction, the Hospital
District alleged that it possessed sovereign immunity with respect to the
retaliatory discharge claims that the doctors had asserted pursuant to chapter
161 of the Texas Health and Safety Code. 
See Tex. Health &
Safety Code Ann. ch. 161 (Vernon Supp. 2006).  After a hearing, the trial court denied the
Hospital District=s plea to the jurisdiction.  This accelerated interlocutory appeal
followed.  See Tex. Civ. Prac. & Rem. Code Ann. '
51.014(a)(8) (Vernon Supp. 2006).








In five issues, the Hospital District requests
that we reverse the trial court=s denial
of its plea to the jurisdiction.  In
issue five, the Hospital District contends that it did not waive sovereign immunity
on the doctors= retaliatory discharge claims
because they were not compulsory counterclaims to the Hospital District=s breach
of contract claims.  In issues one, two,
three, and four, the Hospital District alleges that the Asue and
be sued@
language set forth in section 286.086 of the Texas Health and Safety Code does
not constitute a clear and unambiguous waiver of sovereign immunity.  See Tex.
Health & Safety Code Ann. ' 286.086
(Vernon 1999) (providing that the hospital board may sue and be sued).  In light of the supreme court=s
decision in Tooke v. City of Mexia, holding that statutory Asue and
be sued@
language is not, by itself, a clear and unambiguous waiver of sovereign
immunity, we sustain issues one, two, three, and four.  See 197 S.W.3d 325, 342 (Tex.
2006).  Accordingly, the trial court=s denial
of the Hospital District=s plea to the jurisdiction is
sustainable only ifCas alleged by the doctorsCtheir
claims are, as an offset, germane to, connected with, or properly defensive to
the Hospital District=s breach of contract claims
seeking affirmative relief.

                                 III. 
Standard of Review








We review the trial court=s ruling
on a plea to the jurisdiction based on immunity from suit under a de novo
standard of review.  Tex. Dep=t of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.
2004); Tex. Natural Res. Conserv. Comm=n v.
IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). 
The plaintiff has the burden to plead facts affirmatively showing that
the trial court has jurisdiction.  Tex.
Ass=n of Bus. v. Tex. Air Control
Bd., 852 S.W.2d 440, 446 (Tex. 1993); Univ. of N. Tex. v. Harvey,
124 S.W.3d 216, 220 (Tex. App.CFort
Worth 2003, pet. denied).  When a plea to
the jurisdiction challenges the existence of jurisdictional facts, our review
is not restricted solely to the pleadings, but we must consider any relevant
evidence submitted by the parties when necessary to resolve the jurisdictional
issue raised.  See Bland ISD. v. Blue,
34 S.W.3d 547, 555 (Tex. 2000); Tex. Tech Univ. v. Finley, No.
07-06-0111-CV, 2006 WL 2361184, at *1‑2 
(Tex. App.CAmarillo Aug. 15, 2006, no
pet.).

                 IV.  The
Law Concerning Sovereign Immunity








Sovereign immunity is a common law doctrine that
protects governmental entities from lawsuits for money damages.  Reata Constr. Corp. v. City of Dallas,
197 S.W.3d 371, 374 (Tex. 2006). 
Political subdivisions of the state, including Hospital Districts, are
entitled to such immunityCtypically referred to as
governmental immunityCunless it has been waived.[2]  See Wichita Falls State Hosp. v. Taylor,
106 S.W.3d 692, 694 n.3 (Tex. 2003). 
Governmental immunity is best understood as two distinct types of
immunityCimmunity
from suit, which bars a suit unless the state consented to it, and immunity
from liability, which protects the state from judgments even if it did consent
to the suit.  Reata, 197 S.W.3d at
374; Tooke, 197 S.W.3d at 332. 
The first type of sovereign immunity, immunity from suit, deprives a
trial court of subject matter jurisdiction. 
See Miranda, 133 S.W.3d at 224. 
However, even when a governmental entity is granted immunity from suit,
it may waive that immunity under certain circumstances.  See Reata, 197 S.W.3d at 377.








One instance in which a governmental entity
waives governmental immunity occurs when the governmental entity files suit
asserting affirmative claims for relief; the governmental entity waives its
immunity concerning claims against it that are germane to, connected with, and
properly defensive to the matters on which the governmental entity based its
claims for affirmative relief.  Id.;
Kinnear v. Tex. Comm=n on
Human Rights, 14 S.W.3d 299, 300 (Tex. 2000); Anderson,
Clayton & Co. v. State ex rel. Allred, 62 S.W.2d 107, 110 (Tex.
1933).  Cf. State v. Humble Oil &
Ref. Co., 169 S.W.2d 707, 708-10 (1943) (providing example of when adverse
party=s offset
claim was not Adependent upon, connected with,
or [grown] out of the subject matter of [the State=s] suit@).  That is, when a governmental entity asserts
affirmative claims for relief, adverse parties may assert, Aas an
offset, claims germane to, connected with, and properly defensive to those
asserted by the governmental entity.@  Reata, 197 S.W.3d at 377.

In Reata, the City of Dallas issued a
temporary license to Dynamic Cable Construction Corporation, Inc. to install
fiber optic cable in Dallas.  Id.
at 373.  Dynamic subcontracted with Reata
to perform the drilling for the project and Reata inadvertently drilled into a
water main, causing flooding of a nearby building owned by Southwest Properties
Group, Inc.  Id.  After Southwest sued Dynamic and Reata to
recover the damages it suffered from the flooding, Reata asserted a third party
claim against the City of Dallas for negligently misidentifying the water main=s
location.  Id.  Before answering Reata=s
petition, the City intervened in the case, asserting negligence claims against
Dynamic.  Id.  The Texas Supreme Court held that the City=s
decision to file a suit for damages amounted to a decision to leave its sphere
of immunity from suit for claims against it which were germane to, connected
with, and properly defensive to claims the City asserted and that the City was
not immune from Reata=s claims against it to the
extent that Reata=s claims resulted in an offset
to the City=s recovery.  Id. at 377.








             V. 
Application of the Law to the Present Facts

The Hospital District argues that it did not
waive its sovereign immunity for the doctors=
retaliatory discharge claims because the doctors= claims
are not compulsory counterclaims to the Hospital District=s breach
of contract claims.  But we must analyze
the issue applying a different test.  A
compulsory counterclaim is one that Aarises
out of the transaction or occurrence that is the subject matter of the opposing
party=s claim
and does not require for its adjudication the presence of third parties of whom
the court cannot acquire jurisdiction.@  Tex.
R. Civ. P. 97(a).  In Reata,
the supreme court formulated the test not as whether a claim is compulsory, but
whether it is assertable as an offset and is germane to, connected with, and
properly defensive to the governmental entity=s claim.  Reata, 197 S.W.3d at 377.  Because a counterclaim could be compulsory
under the rules of civil procedure but still not be germane to, connected with,
and properly defensive to the underlying claim, Reata dictates a
narrower waiver standard than that advocated by the Hospital District.  See City of Irving v. Inform Constr.,
Inc., 201 S.W.3d 693, 694 (Tex. 2006) (holding that whether counterclaim is
compulsory has no bearing on whether city waived immunity from suit).













The issue then, is whether the doctors= claims
for retaliatory discharge are germane to, connected with, and properly
defensive to the Hospital District=s breach
of contract claims to the extent that the doctors= claims
offset those asserted by the Hospital District.[3]  See Reata, 197 S.W.3d at 373,
377.  To prove a retaliatory discharge
claim under chapter 161 of the Texas Health and Safety Code, the doctors must
show that (1) they reported a violation; (2) the report was made to a
supervisor, an administrator, a state regulatory agency, or a law enforcement
agency; (3) the report was made in good faith; and (4) they were suspended,
terminated, disciplined or otherwise discriminated against.  See Tex.
Health & Safety Code Ann. '
161.134(a), (f); Tomhave v. Oaks Psychiatric Hosp., 82 S.W.3d 381, 385
(Tex. App.CAustin 2002, pet. denied).  To prove its breach of contract counterclaim,
the Hospital District must demonstrate (1) a valid contract, (2) that the
Hospital District performed or tendered performance under the contract, (3)
that Dr. Carter and Dr. Davidson-Cox breached the contract and, (4) that the
Hospital District suffered damages as a result of the breach.  See Sullivan v. Smith, 110 S.W.3d 545,
546 (Tex. App.CBeaumont 2003, no pet.); Renteria
v. Trevino, 79 S.W.3d 240, 242 (Tex. App.CHouston
[14th Dist.] 2002, no pet.).  To
establish the third element of its breach of contract claim, the Hospital
District alleges that the breach occurred when the doctors resigned their
privileges.  Specifically, the Hospital
District pleaded that the doctors had resigned and that the agreements Aobligated
them to maintain a full-time medical practice in Muenster.  If that condition was not satisfied, the
agreements allowed the Hospital to terminate the contracts for cause, and the
balance of the amounts advanced to the doctors would become immediately due and
payable.@








Clearly the doctors=
retaliatory discharge claims are germane to, connected with, and properly
defensive to the Hospital District=s breach
of contract counterclaim.[4]  If, in fact, the Hospital District engaged in
the retaliatory discharge of Dr. Carter and Dr. Davidson-Cox, that fact is
germane to, connected with, and properly defensive to the breach alleged by the
Hospital DistrictCthe failure to maintain a
full-time medical practice in Muenster. 
That is, being discharged is properly defensive to the failure to
maintain a medical practice at the hospital. 
Because the doctors=
retaliatory discharge claims are germane to, connected with, and properly
defensive to the Hospital District=s breach
of contract counterclaim, we hold that the Hospital District has waived its
immunity from suit for the retaliatory discharge claims.  See Reata, 197 S.W.3d at 377.  Thus, we overrule the portion of the Hospital
District=s fifth
issue claiming that it did not waive immunity from suit concerning the
retaliatory discharge claims.

The waiver, however, extends only so far as the
doctors=
retaliatory discharge claims act as offsets to the Hospital District=s breach
of contract counterclaims seeking $40,500.19 from Dr. Carter and $196,464.69
from Dr. Davidson-Cox.  See id.  The Hospital District continues to have
immunity from affirmative damage claims against it for monetary relief
exceeding amounts necessary to offset its breach of contract claims.  See City of Irving, 201 S.W.3d at
694.  Thus, the maximum amount the
doctors may seek to recover in their retaliatory discharge claims is limited to
the total affirmative relief recovered by the Hospital District in its breach
of contract counterclaim.  See id.  We sustain the portion of the Hospital
District=s fifth
issue raising this matter.[5]

                                        VI. 
Conclusion








Having sustained the Hospital District=s first,
second, third, and fourth issues, we hold that section 286.086 of the Texas
Health and Safety Code does not constitute a clear and unambiguous waiver of
the Hospital District=s immunity from suit.  Having overruled the portion of the Hospital
District=s fifth
issue challenging its waiver of immunity from suit for the doctors=
retaliatory discharge claims, we affirm the trial court=s denial
of the Hospital District=s plea to the jurisdiction.  Having sustained the portion of the Hospital
District=s fifth
issue challenging the scope of the waiver found by the trial court, we modify
the trial court=s order denying the Hospital
District=s plea
to the jurisdiction so that the last sentence of the order reads, AIt is
accordingly ORDERED that Defendant=s Plea
to the Jurisdiction is hereby DENIED to the full extent of Defendant=s
affirmative claims for monetary relief.@  As modified, we affirm the trial court=s order
denying the Hospital District=s plea
to the jurisdiction.

 

 

SUE
WALKER

JUSTICE

 

PANEL M: GARDNER, WALKER,
and MCCOY, JJ.

 

DELIVERED: January 25,
2007











[1]Dr. Davidson-Cox, in her
resignation letter, alleged that the Hospital had terminated her employment and
Dr. Carter, in her resignation letter, alleged constructive discharge.





[2]The Muenster Hospital
District is a political subdivision of the state.  See Act of June 16, 1965, 59th Leg.,
R.S., ch. 477, 1965 Tex. Gen. Laws 984, 984-91, amended by Act of May 28,
2001, 77th Leg., R.S., ch. 428, '' 2.01-03, 2001 Tex. Gen. Laws 816, 816-17.





[3]The Hospital District
concedes that it is not immune from suit for the breach of contract claims
asserted by the doctorsCthat is, the doctors= claims that the Hospital
District breached its agreements with them. 
See Tex. Loc. Gov=t
Code Ann. '' 271.151-.160 (Vernon
2005).





[4]Just as the supreme court
in Reata saw Ano substantive difference
between a decision by the City to file an original suit and the City=s decision to file its
claim as an intervenor[,]@ we see no substantive
difference between a decision by the Hospital District to file an original suit
and its decision to file its breach of contract claim as a counterclaim.  See 197 S.W.3d at 377.





[5]This opinion deals only
with the Hospital District=s immunity from suit and expressly does not
address immunity from liability.