**Affirmed in Part, Reversed and Remanded in Part, and Opinion Filed July 14, 2021**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-01552-CV**

**PHIL FERRANT, Appellant**

**V.**

**LEWIS BRISBOIS BISGAARD & SMITH, L.L.P., Appellee**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-03137**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Partida-Kipness

Appellee Lewis Brisbois Bisgaard & Smith, L.L.P. (LBBS) sued appellant

Phil Ferrant for unpaid legal fees. After a jury trial, the trial court rendered judgment

on the verdict against Ferrant. On appeal, Ferrant challenges the legal sufficiency of

the evidence to support the jury's finding that a contract existed between Ferrant and

LBBS and its award of attorney's fees to LBBS for pursuing the underlying

litigation. We affirm the trial court's judgment in favor of LBBS on its breach of

contract claim and reverse the judgment awarding LBBS attorney's fees for pursuing

its suit against Ferrant. We remand to the trial court for further proceedings regarding the fees claim.

## BACKGROUND

Attorney Michael Cramer joined LBBS as a partner in August 2012. At that time, Cramer represented Ferrant on several ongoing legal matters. On August 2, 2012, Cramer sent Ferrant a Letter of Understanding regarding transferring his files to LBBS:

MICHAEL R. CRAMER
DIRECT DIAL: (214) 722-7102
E-MAIL: MCRAMER@LBBSLAW.COM

August 2, 2012

Phil Ferrant
philferrant@finbiz.biz

Re: Letter of Understanding
Transfer of Files to Lewis, Brisbois, Bisgaard & Smith

Dear Phil Ferrant:

This shall serve as a letter of understanding that you have approved the transfer of the following file(s) from Lloyd Ward & Associates to Lewis Brisbois Bisgaard & Smith LLP effective immediately:

| File Name: | Approved Hourly Rates: |
|---|---|
| Ferrant | Partner $250; Associates $175; Paralegals $125; Legal Assistants $100 |

Please sign and return to me as quickly as possible so that a file can be opened on your behalf.

Very truly yours,

Michael R. Cramer

ACKNOWLEDGMENT:

Dated: 8/13/12        Signed:

Ferrant signed the Letter of Understanding on August 13, 2012. After Ferrant signed the Letter of Understanding, Cramer, along with other attorneys and paralegals employed by LBBS, provided various legal services to Ferrant on four matters:

–2–

(1) Independent Order of Foresters (IOF), (2) Graham & Associates (Graham), (3) Michael Sisk (Sisk), and (4) Board of Adjustment of the City of Fort Worth (BOA). Cramer's employment with LBBS ended November 1, 2013. LBBS provided no further legal services to Ferrant after Cramer left the firm.

Over the course of its representation of Ferrant, LBBS performed legal services that resulted in legal fees and expenses of $202,401.41. Ferrant paid LBBS $102,000 of the fees charged for those services. After Cramer left the firm, however, Ferrant failed to pay the remaining balance due of $100,401.41. On March 19, 2015, LBBS sued Ferrant to collect the unpaid fees and expenses.

The case was tried to a jury on August 12, 2019. Ferrant appeared pro se at trial. Lindsay Nickle, an LBBS partner, testified for LBBS as its corporate representative. Nickle testified that the firm's files showed that Ferrant was the primary contact for and decision-maker in the four matters in which LBBS represented Ferrant. According to Nickle, Ferrant approved case strategy, dealt with LBBS attorneys, reviewed and sometimes drafted documents, and conducted his own research at times. Ferrant was also the person who made payments in each matter.

Nickle also explained that because Ferrant had an hourly billing arrangement with the firm, LBBS sent him invoices on each matter on a monthly basis if time was generated in that matter. LBBS sent those invoices to Ferrant by e-mail. LBBS charged Ferrant the hourly rates reflected in the Letter of Understanding: $250 for

partners, $175 for associates, $125 for paralegals, and $100 for legal assistants. LBBS expected its clients, including Ferrant, to pay each bill after receiving the invoice. Nickle testified that if Ferrant had a problem with an invoice, he could contact LBBS and discuss it. LBBS found no written disputes and no emails from Ferrant to Cramer or to the billing department regarding the invoices.

LBBS offered, and the trial court admitted, original and amended billing invoices and final accounts–receivable summary reports (A/R reports) showing the fees incurred by LBBS for legal work done in the IOF, Graham, Sisk, and BOA matters. The invoices also reflected disbursements advanced in each case, such as costs for postage, copies, and travel. Those documents show that LBBS incurred legal fees and disbursements of $202,401.41, Ferrant paid $102,000 to LBBS, Ferrant made his last payment to LBBS on September 24, 2013, and the remaining balance due was $100,401.41. Nickle testified that the work done in these matters was necessary and the charges actually incurred were reasonable.

Nickle also testified as to the fees incurred by LBBS pursuing the lawsuit against Ferrant. Nickle requested a fee award of $75,207.50 through trial, and conditional appellate fees of $27,500 for a successful appeal to the Dallas Court of Appeals and $13,750 if a petition for review is filed in the Texas Supreme Court. Nickle did not offer contemporaneous billing records to support the requested fees through trial.

Ferrant testified on his own behalf. During his narrative testimony on direct examination, Ferrant told the jury that he hired Cramer in the IOF matter about two years before Cramer moved to LBBS because his prior counsel developed a conflict. Ferrant testified that Cramer changed firms a couple of times after he hired Cramer, and Ferrant followed him to each new firm. Ferrant admitted that he made payments to LBBS as shown on the invoices and A/R reports. He told the jury, however, that LBBS failed to credit some of those payments and billed him on matters when there was no reason for legal work to be done on the matter. He also testified that LBBS never called to tell him he was delinquent in payments or to collect. Ferrant told the jury that he thought LBBS owed him more than $100,000.

On cross-examination by LBBS's counsel, Ferrant agreed that he transferred the legal matters that Cramer was handling for him in August 2012 to LBBS when Cramer joined the firm. When Cramer transferred Ferrant's matters to LBBS, Ferrant knew that Cramer was going to provide legal work for him and he would be expected to pay for it. Ferrant conceded that he regularly received emails from LBBS with invoices attached. The trial court admitted a collection of such emails from Christine Choi at LBBS to Ferrant that attached invoices and stated that Choi was with the LBBS billing department. Ferrant never sent an email back to Choi saying the invoices were incorrect, nor did he communicate with Choi about any billing issues other than receiving the invoices from her. Similarly, Ferrant never sent an email to Cramer challenging the accuracy of the invoices. Ferrant testified that he

chose not to read the invoice if it related to the Graham matter because he believed no work was being done in that matter and any bills would be corrected by Cramer. Ferrant maintained that he spoke on the telephone with Cramer about his concern that time was being billed improperly in the Graham matter and was assured those bills would be corrected.

Nickle showed Ferrant Plaintiff's Exhibit 5, which was a list prepared by Ferrant of payments he made to LBBS. The payments totaled $57,000. Although Ferrant agreed that he had provided LBBS with no other evidence of additional payments made, he conceded that he had no reason to dispute that LBBS credited his account for $102,000 in payments. But he also told the jury that LBBS had not credited his account for $30,000 of the payments listed on Plaintiff's Exhibit 5.

No other witnesses testified. LBBS and Ferrant presented closing arguments, and the jury retired to deliberate. The jury made the following findings:

1. The parties agreed that LBBS would provide legal services on behalf of Ferrant billed by hourly increments at a specific hourly rate, together with expenses associated with the provision of legal services, and that Ferrant would pay LBBS for the legal services provided.

2. Ferrant failed to comply with the agreement.

3. The amount owed is $100,401.41.

The jury awarded LBBS $50,000 in attorney's fees for legal work incurred pursuing the case against Ferrant through trial and awarded no conditional appellate fees.

The trial court signed a final judgment on the verdict on September 24, 2019. Ferrant filed a motion for judgment notwithstanding the verdict, which was denied by written order. This appeal followed.

**ANALYSIS**

In two issues, Ferrant argues the evidence was legally insufficient to support the jury's finding that a contract existed and the fees awarded for bringing suit against him. We address each in turn.

## I.      Existence of a contract

We review the legal sufficiency of evidence to support a jury finding under the well-established standard set out in *City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005). A legal-sufficiency point will be sustained where the record demonstrates (1) a complete absence of evidence of a vital fact, (2) the only evidence offered to prove a vital fact is barred from consideration by rules of law or evidence, (3) the evidence offered to prove a fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810–17. In reviewing a legal–sufficiency challenge, the court must view the evidence in the light most favorable to the verdict, "credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *Id.* at 827. Here, Ferrant argues the evidence is legally insufficient to support the jury's finding that a contract existed between he and LBBS because there is no

direct evidence of an agreement. According to Ferrant, to find a contract here, we must impermissibly stack inferences. We disagree.

Under Texas law, "[a]n attorney may recover unpaid hourly fees for professional services rendered under the usual rules of contract law." *Webb v. Crawley*, 590 S.W.3d 570, 579 (Tex. App.—Beaumont 2019, no pet.) (quoting *McRay v. Dow Golub Remels & Beverly, LLP*, 554 S.W.3d 702, 705 (Tex. App.—Houston [1st Dist.] 2018, no pet.)). To prove a claim for attorney's fees, the attorney suing to recover his fees must show (1) the attorney and the client had a valid agreement obligating the client to pay fees, (2) the attorney tendered performance, (3) the client breached the agreement by failing to pay a reasonable fee, and (4) damages resulted from the client's breach. *Webb*, 590 S.W.3d at 579 (first citing *Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) and then citing *Sullivan v. Smith*, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no pet.)); *see also Levetz v. Sutton,* 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied) (listing elements of breach of contract claim). The elements required for the formation of a valid contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Levetz*, 404 S.W.3d at 803 (citing *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied)).

Here, the jury charge included the following question and instruction regarding the existence of an agreement between Ferrant and LBBS:

QUESTION NO. 1:

Did Phil Ferrant and Lewis Brisbois Bisgaard & Smith, L.L.P. agree that Lewis Brisbois Bisgaard & Smith, L.L.P. would provide legal services on behalf of Phil Ferrant billed by hourly increments at specific hourly rates, together with expenses associated with the provision of legal services, and that Phil Ferrant would pay Lewis Brisbois Bisgaard & Smith, L.L.P. for the legal services provided?

A. In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

Answer "Yes" or "No": _____

The jury answered Question No. 1 "Yes" and found in Question No. 2 that Ferrant failed to comply with the agreement found by the jury in Question No. 1. Neither party objected to the language of Question No. 1 and its accompanying instruction. We must, therefore, review the evidence in light of this question and instruction. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000); *see also Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985).

We first determine whether there is any evidence to support the jury's finding that Ferrant and LBBS agreed that LBBS would provide legal services on behalf of Ferrant billed by hourly increments at specific hourly rates together with expenses associated with the provision of legal services. *See Zimlich*, 29 S.W.3d at 71 (focusing on whether evidence supported finding that city employee acted with

–9–

either level of intent included in jury instruction). The Letter of Understanding states that its purpose is to memorialize that Ferrant has "approved the transfer of the following file(s)" to LBBS from Lloyd Ward & Associates at specified "Approved Hourly Rates." The file name is listed as "Ferrant," and the "Approved Hourly Rates" are listed as "Partner $250; Associates $175; Paralegals $125; Legal Assistants $100." The Letter of Understanding requests that Ferrant sign and return it to Cramer "as quickly as possible so that a file can be opened on your behalf." Ferrant signed and dated the Letter of Understanding under the word "Acknowledgment."

After signing the Letter of Understanding, Ferrant permitted Cramer and other LBBS employees to provide him legal services in four matters. Ferrant was the firm's client contact on those matters, approved strategy and reviewed documents in those matters, and attended trial in the IOF matter. Ferrant also paid $102,000 to LBBS for the work provided in those matters, which is roughly half of the total fees and expenses billed in those matters. The fees charged were calculated using the approved hourly rates set out in the Letter of Understanding. And Ferrant conceded that he made no written complaints to Cramer or anyone at LBBS regarding the rates charged or the amount of fees and expenses billed.

Moreover, Ferrant did not dispute at trial that he and LBBS had an agreement. Ferrant testified that when the files were transferred to LBBS, he knew that Cramer would provide legal work for him and he would be expected to pay for that work.

And during his closing argument, Ferrant told the jury that an agreement existed between he and LBBS: "In reference to the first question, there was an agreement that they perform services for me." Ferrant argued that his dispute was with the amount of fees billed. During his testimony and closing argument, Ferrant maintained that some of the invoices were incorrect, either because they purportedly failed to credit payments made or included charges for work done in other matters or for other clients. LBBS presented credible evidence to rebut those allegations, and the jury was permitted to weigh the evidence and the credibility of the witnesses when deciding who to believe. *See Jelinek v. Casas*, 328 S.W.3d 526, 538 (Tex. 2010) ("Courts should not usurp the jury's role as fact finder, nor should they question the jury's right to believe one witness over another."); *see also First City Bank-Farmers Branch v. Guex*, 659 S.W.2d 734, 739 (Tex. App.—Dallas 1983), *aff'd sub nom.*, *First City Bank-Farmers Branch, Tex. v. Guex*, 677 S.W.2d 25 (Tex. 1984) ("It is the sole province of the trier of fact, here the jury, to judge the credibility of the witnesses and the weight to be given their testimony.").

Regardless, any purported dispute concerning the amount billed does not relate to the issue raised on appeal—whether an agreement existed between Ferrant and LBBS for the provision of legal services billed by hourly increments at specific hourly rates along with related expenses. We conclude the Letter of Understanding together with Ferrant's own testimony, Ferrant's payment of half of the fees and expenses billed by LBBS, Nickle's testimony, and the invoices and A/R reports

–11–

constitute legally sufficient evidence supporting the jury's determination that such an agreement existed here.

The evidence also supports the jury's determination that Ferrant and LBBS agreed that Ferrant would pay LBBS for the legal services provided to him. Ferrant testified that he paid Cramer for the legal services provided to him when Cramer worked at his prior law firm. Ferrant also testified that when Cramer transferred Ferrant's matters to LBBS, Ferrant knew that Cramer would provide legal work for him and that he would be expected to pay for that work. Ferrant acknowledged receiving monthly invoices and making payments on those invoices. Ferrant's own testimony provides legally sufficient evidence to support the jury's finding that Ferrant agreed to pay for the legal services provided to him by LBBS.

For these reasons, we conclude the evidence is legally sufficient to support the jury's answer to Question No. 1 in light of the instruction given. *See Zimlich*, 29 S.W.3d at 71; *see also Red Sea Gaming, Inc. v. Block Invs. (Nevada) Co.*, 338 S.W.3d 562, 569 (Tex. App.—El Paso 2010, pet. denied). We overrule Ferrant's first issue.

## II.     Fee award

Next, Ferrant challenges the jury's award of attorney's fees. Ferrant maintains the fee award lacks legally sufficient supporting evidence because LBBS failed to provide evidence of specific tasks performed as required by *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019). We agree.

A party seeking attorney's fees "bears the burden of providing sufficient evidence" of both the reasonable hours worked and a reasonable hourly rate. *Id.* at 498. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. *Id.* "General, conclusory testimony devoid of any real substance will not support a fee award. Thus, a claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Id.* at 501–02 (internal citations omitted). Contemporaneously billing records are not required but "are strongly encouraged to prove the reasonableness and necessity of requested fees when those elements are contested." *Id.* at 502.

In *Rorhmoos*, UTSW's attorney testified that his fees of $800,000 were reasonable and necessary due to his and his staff's review of "'millions' of emails and reviewing 'hundreds of thousands' of papers in discovery, more than forty depositions taken, and a forty-page motion for summary judgment." *Id.* at 502. The Texas Supreme Court concluded this testimony was "too general to establish that the requested fees were reasonable and necessary. Without detail about the work done, how much time was spent on the tasks, and how he arrived at the $800,000 sum, Howard's testimony lacks the substance required to uphold a fee award." *Id.* at 505.

Here, LBBS's corporate representative testified to her qualifications to testify to attorney's fees, the total number of hours worked by three partners, three associates, a paralegal, and a law clerk, their hourly rates, and the total amount of fees requested by LBBS. She further testified that LBBS was only seeking compensation for "work specifically related to preparing and filing the petition, handling discovery and motions, preparing for trial, being at trial over the course of the litigation we've had with Mr. Ferrant." LBBS sought compensation for 397.4 hours of work, which consisted of 107.1 partner hours, 242.9 associate hours, 1 paralegal hour, and 46.4 law clerk hours. Those fees totaled $75,207.50.

Nickle did not, however, provide any billing statements or other documentation to corroborate or support her testimony. She presented no testimony or documentary evidence of the specific tasks performed by LBSS attorneys and staff or the amount of time spent on specific tasks. Without such details, LBBS presented legally insufficient evidence to support the fees award. *See Rohrmoos*, 578 S.W.3d at 505; *see also Advanced Tech. Transfer & Intellectual Prop. Group LLC v. Krenek*, No. 14-19-00459-CV, – S.W.3d –, 2021 WL 2325104, at *5 (Tex. App.—Houston [14th Dist.] June 8, 2021, no pet. h.) ("Because the record does not detail the particular services performed for 34.25 of the 54.25 hours worked by attorney Krenek, we conclude the evidence is legally insufficient to support the full award of attorney's fees."); *Eason v. Deering Constr., Inc.*, No. 02-19-00310-CV, 2020 WL 7062687, at *8 (Tex. App.—Fort Worth Dec. 3, 2020, no pet.) (mem. op.) ("While

Deering's counsel testified to the aggregate amount of fees and the general tasks carried out by himself and his two associates, this sort of evidence has been held to be insufficient."); *Sloane v. Godberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 621 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (reversing fee award where attorney "conceded that he had not allocated hours spent on particular tasks" and supporting invoices did not break down tasks by time spent).

Accordingly, we sustain Ferrant's second issue, reverse the fees award, and remand for further proceedings relating to LBBS's request for attorney's fees through trial. *See Rohrmoos*, 578 S.W.3d at 506 (reversing appellate court's judgment as to the attorney's fee award and remanding to the trial court for a redetermination of fees). No party challenged the jury's award of no conditional appellate fees or the judgment's inclusion of no such fees. On remand, the trial court shall not redetermine an award for conditional appellate fees. *See Tatum v. Hersh*, 559 S.W.3d 581, 588 (Tex. App.—Dallas 2018, no pet.) (excluding redetermination of conditional fees on remand where no party challenged those fees on appeal).

## CONCLUSION

We overrule Ferrant's first issue and sustain his second issue. Accordingly, we affirm the trial court's judgment as to LBBS's breach of contract claim and damages for that breach, and we reverse the judgment as to the attorney's fee award and remand to the trial court for a redetermination of fees consistent with this opinion.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

191552F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PHIL FERRANT, Appellant

No. 05-19-01552-CV     V.

LEWIS BRISBOIS BISGAARD &
SMITH, L.L.P., Appellee

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-03137.
Opinion delivered by Justice Partida-
Kipness. Justices Schenck and
Osborne participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding Appellee Lewis Brisbois Bisgaard & Smith, L.L.P. attorney's fees of $50,000. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 14th day of July 2021.