IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0815
════════════
 
Intercontinental Group 
Partnership, Petitioner,
 
v.
 
KB Home Lone Star L.P., 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued March 12, 
2009
 
 
            
Justice Willett delivered 
the opinion of the Court, in which Chief 
Justice Jefferson, Justice 
Hecht, Justice Green, and 
Justice Johnson joined.
 
            
Justice Brister filed a 
dissenting opinion, in which Justice 
O’Neill, Justice Wainwright 
and Justice Medina joined.
 
 
            
This breach-of-contract case poses a straightforward question: What does 
“prevailing party” mean? We have construed this phrase in a discretionary 
fee-award statute1 but not in a mandatory fee-award 
contract. Specifically, when a contract mandates attorney’s fees to a 
“prevailing party,” a term undefined in the contract, has a party “prevailed” if 
the jury finds the other side violated the contract but awards no money damages? 
We agree with the United States Supreme Court, which holds that to prevail, a 
claimant must obtain actual and meaningful relief, something that materially 
alters the parties’ legal relationship.2 That is, a plaintiff must prove 
compensable injury and secure an enforceable judgment in the form of damages or 
equitable relief. The plaintiff here secured neither. We thus reach the same 
conclusion as in another breach-of-contract case decided today: “a client must 
gain something before attorney’s fees can be awarded.”3 We reverse the court of appeals’ judgment 
and render a take-nothing judgment.
I. Background
            
KB Home Lone Star L.P. (KB Home), a national homebuilder, contracted with 
Intercontinental Group Partnership (Intercontinental), a real estate developer, 
to develop lots in a McAllen subdivision known as Santa Clara and sell them to 
KB Home. The contract provided:
 
Attorney’s fees. If either party named herein brings 
an action to enforce the terms of this Contract or to declare rights hereunder, 
the prevailing party in any such action, on trial or appeal, shall be entitled 
to his reasonable attorney's fees to be paid by losing party as fixed by the 
court.
 
“Prevailing 
party” was not defined.
            
Intercontinental began selling Santa Clara lots to other buyers, and KB 
Home sued for breach of contract (among other theories) and sought specific 
performance, damages, injunctive relief, and attorney’s fees.4 KB Home did not seek a declaratory 
judgment under the contract. At trial, KB Home sought only one type of actual 
damages: lost profits due to Intercontinental’s 
alleged breach. Intercontinental counterclaimed, asserting that KB Home failed 
to honor an oral agreement to buy Santa Clara at a below-market price in 
exchange for an exclusive partner arrangement for future property 
acquisitions.
            
The jury found that Intercontinental breached the written contract but 
answered “0” on damages, though it did award KB Home $66,000 in attorney’s 
fees.5 The jury rejected Intercontinental’s oral-agreement claim and consequently did 
not answer the conditional question about Intercontinental’s attorney’s fees related to that claim. 
Both parties moved for judgment, claiming attorney’s fees as the “prevailing 
party.” The trial court sided with KB Home and signed a judgment in its favor 
for $66,000, concluding that KB Home “should recover its damages against 
[Intercontinental] as found by the jury . . . .” The court of appeals 
affirmed.6
II. Is KB Home the Prevailing Party?
            
Under the American Rule, litigants’ attorney’s fees are recoverable only 
if authorized by statute or by a contract between the parties.7
A. Applicability of Chapter 38 to KB Home’s Breach Claim
            
We first address the applicability of the discretionary attorney’s-fees 
provision in Chapter 38 of the Civil Practice and Remedies Code.8 As seen here, the statutory and contract 
provisions are similar in general but dissimilar in particular:
 

 
 
 
 The 
 Contract
 
 Chapter 
 38
 
 
 If 
 either party named herein brings an action to enforce the terms of this 
 Contract or to declare rights hereunder, the prevailing party . . . shall 
 be entitled to his reasonable attorney’s fees to be paid by losing party 
 as fixed by the court.
 
 A 
 person may recover reasonable attorney’s fees from an individual or 
 corporation, in addition to the amount of a valid claim and costs, if the 
 claim is for . . . an oral or written contract.
 
            
We held in Green International, Inc. v. Solis that before a party 
is entitled to fees under section 38.001, that “party must (1) prevail on a 
cause of action for which attorney's fees are recoverable, and (2) recover 
damages.”9 If Green and Chapter 38 applied to 
this case, KB Home could not recover attorney’s fees since it did not recover 
any damages. But Green, while instructive, is not controlling, nor is 
Chapter 38.
            
Parties are free to contract for a fee-recovery standard either looser or 
stricter than Chapter 38's, and they have done so here. As KB 
Home points out, Chapter 38 permits recovery of attorney’s fees “in addition to 
the amount of a valid claim,” while nothing in the contract expressly requires 
that a party receive any “amount” of damages. The triggering event under 
the contract is that a party prevail in an action “to enforce the terms of this 
Contract or to declare rights hereunder 
. . . .” True enough, but the question remains: what does 
“prevailing party” mean under the contract?
B. Attorney’s Fees Under the 
Contract
            
The contract leaves “prevailing party” undefined, so we presume the 
parties intended the term’s ordinary meaning.10 We have found the United States Supreme 
Court’s analysis helpful in this area.11 In Hewitt v. Helms, the Court was 
faced with the question of whether a plaintiff who obtained a favorable judicial 
pronouncement in the course of litigation, yet suffered a final judgment against 
him, could be a prevailing party.12 Helms had sued several prison officials 
alleging a violation of his constitutional rights.13 The district court granted summary 
judgment against him on the merits of his claim, but the court of appeals 
reversed, holding that he had a valid constitutional claim.14 On remand, the district court still 
rendered summary judgment against him, finding that the defendants were shielded 
by qualified immunity.15 Helms then sought his attorney’s fees, 
claiming that the court of appeals’ decision made him the prevailing party.16 The Supreme Court disagreed, saying 
“[r]espect for ordinary language requires that a 
plaintiff receive at least some relief on the merits of his claim before he can 
be said to prevail.”17 And since Helms did not obtain a damages 
award, injunctive or declaratory relief, or a consent decree or settlement in 
his favor, he was not a prevailing party.18 Five years later in Farrar v. 
Hobby, a federal civil-rights case, the Court elaborated:
 
 [T]o 
qualify as a prevailing party, a . . . plaintiff must obtain at least some 
relief on the merits of his claim. The plaintiff must obtain an enforceable 
judgment against the defendant from whom fees are sought, or comparable relief 
through a consent decree or settlement. Whatever relief the plaintiff secures 
must directly benefit him at the time of the judgment or settlement. Otherwise 
the judgment or settlement cannot be said to “affect the behavior of the 
defendant toward the plaintiff.” Only under these circumstances can civil rights 
litigation effect “the material alteration of the legal relationship of the 
parties” and thereby transform the plaintiff into a prevailing party. In short, 
a plaintiff “prevails” when actual relief on the merits of his claim materially 
alters the legal relationship between the parties by modifying the defendant's 
behavior in a way that directly benefits the plaintiff.19
 
            
The Court concluded that the plaintiff “prevailed” in Farrar 
because he was awarded one dollar in damages: “A judgment for damages in any 
amount, whether compensatory or nominal, modifies the defendant’s behavior for 
the plaintiff’s benefit by forcing the defendant to pay an amount of money he 
otherwise would not pay.”20 Farrar did not speak to whether a 
plaintiff awarded zero damages can claim prevailing-party status, but under the 
Farrar Court’s analysis, a plaintiff who receives no judgment for damages 
or other relief has not prevailed.
            
The trial-court judgment in today’s case recited the jury’s finding that 
“[t]he sum of zero dollars would fairly and reasonably compensate KB” for its 
damages, if any, resulting from Intercontinental’s 
breach, and that “[t]he sum of sixty-six thousand dollars and zero cents” 
constituted a reasonable fee for the necessary services of KB Home’s attorneys. 
The judgment continued, however:
 
It 
appearing to the Court that, based upon the verdict of the jury, KB Home Lone 
Star should recover its damages against the International Group 
Partnership as found by the jury, and the Court so 
finds.
 
IT IS 
ACCORDINGLY ORDERED, ADJUDGED AND DECREED that KB Home Lone Star have and 
recover from the International Group Partnership judgment for the sum of 
sixty-six thousand dollars and zero cents ($66,000.00).21
 
            
The court erred in making that award. The jury answered “0" on damages, 
and KB Home sought no other type of relief, so the trial court should have 
rendered a take-nothing judgment against KB Home on its contract claim.22
            
It seems beyond serious dispute that KB Home achieved no genuine success 
on its contract claim. Whether a party prevails turns on whether the party 
prevails upon the court to award it something, either monetary or equitable. KB 
Home got nothing except a jury finding that Intercontinental violated the 
contract. It recovered no damages; it secured no declaratory or injunctive 
relief; it obtained no consent decree or settlement in its favor; it received 
nothing of value of any kind, certainly none of the relief sought in its 
petition.23 No misconduct was punished or deterred, 
no lessons taught. KB Home sought over $1 million in damages, but instead left 
the courthouse empty-handed: “That is not the stuff of which legal victories are 
made.”24 Nor do we perceive any manner in which 
the outcome materially altered the legal relationship between KB Home and 
Intercontinental.25 Before the lawsuit, Intercontinental was 
selling lots that were promised to KB Home. After the lawsuit, Intercontinental 
had sold the promised lots and was not required to pay a single dollar in 
damages or do anything else it otherwise would not have done.
            
As judgment should have been rendered in Intercontinental’s favor, it is untenable to say that KB 
Home prevailed and should recover attorney’s fees. A stand-alone finding on 
breach confers no benefit whatsoever.26 A zero on 
damages necessarily zeroes out “prevailing party” status for KB Home.27
C. Declaration of Rights?
            
KB Home argues that it should nonetheless recover attorney’s fees because 
it sued to “declare rights” under the contract and prevailed by obtaining a jury 
verdict that Intercontinental breached the contract. We disagree. In 
Southwestern Bell Mobile Systems v. Franco we noted that “[i]t is the judgment, not the verdict, 
that we must consider in determining whether attorney’s fees are 
proper.”28 The United States Supreme Court has 
likewise reasoned that the judgment is critical to the prevailing-party 
determination.29 In this case, the trial court should 
have rendered a take-nothing judgment on KB Home’s contract claim. Neither law 
nor logic favors a rule that bestows “prevailing party” status upon a plaintiff 
who requests $1 million for actual injury but pockets nothing except a jury 
finding of non-injurious breach; to prevail in a suit that seeks only actual 
damages — compensation for provable economic harm — there must be a showing that 
the plaintiff was actually harmed, not merely wronged.
            
If KB Home had brought its breach-of-contract case and obtained favorable 
answers on the same “failure to comply” questions, but the jury also found that 
an affirmative defense barred KB Home’s claim, a take-nothing judgment in favor 
of Intercontinental would have been rendered. There would be no dispute that KB 
Home had not prevailed, despite jury findings that Intercontinental breached. No 
rational distinction exists between that scenario and the one before us. In 
both, the end result is a take-nothing judgment with no meaningful judicial 
relief for KB Home. Its only “relief” in either case is the gratification that 
comes with persuading a jury that Intercontinental behaved badly. But 
vindication is not always victory. However satisfying as a matter of principle, 
“purely technical or de minimis” success 
affords no actual relief on the merits that would materially alter KB Home’s 
relationship with Intercontinental.30 Accordingly, KB Home, while perhaps a 
“nominal winner”31 in convincing the jury that it was 
“wronged,”32 cannot be deemed a “prevailing party” in 
any non-Pyrrhic sense.33
III. Is Intercontinental the Prevailing Party?
            
If KB Home “lost” by receiving no damages does that mean Intercontinental 
“won” by remitting no damages? We cannot reach this question if it is not 
properly presented, and it is not. On the record before us,34 it is undisputed that Intercontinental 
neither preserved the issue nor presented any evidence (either before, during, 
or after trial) regarding its attorney’s fees for defending KB Home’s 
breach-of-contract claim.35 This failure, along with others 
discussed below, waives any right to recovery.36
            
Intercontinental contends that the phrase “fixed by the court” in the 
contract means the trial judge, not the jury, decides the proper measure of 
attorney’s fees after trial ends, thus “there was no need for Defendant to have 
submitted a question on attorneys fees.” Reading “fixed by the court” to mean 
“fixed by the judge” is a straightforward construction.37 But a contract’s overriding purpose is 
to capture the parties’ intent, meaning we must construe it in light of how the 
parties meant to construe it. In this case, the parties’ trial conduct is itself 
instructive.
            
In this case, KB Home submitted the attorney’s-fees issue, like other 
fact issues, to the jury, not to the court, and the record contains no 
indication that Intercontinental objected.38 Intercontinental’s lone pleading requesting attorney’s fees 
is its original counterclaim, where it asserts Chapter 38, not the written 
contract, as a basis for recovering fees related to its oral-contract 
counterclaim. The one time that Intercontinental mentioned fees spent defending 
KB Home’s written-contract claim came during a post-trial hearing for entry of 
judgment when Intercontinental argued, “If they’re not the prevailing party, 
then we successfully defended. And . . . we’re entitled to attorney’s fees. And 
I’m prepared to present evidence today to that effect.” The trial court did not 
respond, and Intercontinental neither pressed the issue nor made any offer of 
proof. The record contains no mention of a jury-charge conference or any 
pretrial conference, much less one indicating that the manner of setting 
attorney’s fees was in question. Intercontinental never argued the contract was 
ambiguous. Moreover, there is no indication that Intercontinental asked the 
trial court to take judicial notice of trial testimony concerning its attorney’s 
fees,39 or that Intercontinental offered any 
fees-related testimony in the post-trial hearing.
            
Both KB Home as plaintiff on its written-contract claim and 
Intercontinental as counter-plaintiff on its oral-contract claim submitted an 
attorney’s fees question on their affirmative claims, apparently because they 
understood that the jury would hear evidence and decide what fee award, if any, 
was proper. Thus, the parties, given how they and the trial court actually tried 
the case, interpreted “fixed by the court” to mean that fees in this case would 
be determined by a court proceeding (for example, a court judgment effectuating 
the jury’s verdict). This reading is not unreasonable. The contract does not 
reserve fees specifically to the trial judge, but to the court, and both parties 
submitted all fact questions to the jury. In short, any reading of “fixed by the 
court” must be informed by the record and by how the parties chose to present 
fees to the jury on their respective claims.
            
In any case, even assuming the written contract reserved attorney’s fees 
exclusively to the judge and not the jury, Intercontinental has certainly waived 
that argument and its rights to recover fees under the contract. 
Intercontinental did not plead for attorney’s fees under the contract, and never 
sought to amend its pleadings to do so.40 Nor, apparently, did Intercontinental 
ever object, either before the case went to the jury or post-trial, that KB 
Home’s jury question on attorney’s fees was immaterial because the contract left 
that issue to the judge. As noted above, Intercontinental first raised its 
“fixed by the court” argument during a post-trial hearing for entry of judgment, 
after the case (including Intercontinental’s jury 
request for fees on the oral contract) had been fully tried to the jury. Nothing 
indicates that Intercontinental made the trial court aware of its position 
before the jury charge was submitted or raised any issue about the 
contract’s meaning as to attorney’s fees. Nor did Intercontinental offer any 
evidence when it made its oral, post-trial request that the trial court award it 
fees under the contract.
            
Given that both parties tried questions of breach and attorney’s fees to 
the jury, Intercontinental cannot be excused for failing to submit a jury 
question on attorney’s fees incurred in defending KB Home’s lawsuit on the 
written contract, or otherwise preserving the issue for appellate review.41 The issue of whether a 
breaching-but-nonpaying defendant can be a “prevailing party” under an 
attorney’s-fees provision like this is interesting legally, but not before us 
procedurally.42
IV. Response to the Dissent
            
The dissent accuses the Court of ignoring the contract’s language in 
order to reach an easy-to-apply answer. Nothing could be further from the truth. 
Since the contract leaves “prevailing party” undefined, we must do our best to 
effectuate the parties’ intent. We believe the most sensible interpretation is 
that a plaintiff prevails by receiving tangible relief on the merits.
            
Despite what the dissent contends, the Court is not saying a plaintiff 
must recover a money judgment in every breach-of-contract action. Quite the opposite. The dissent cites a variety of situations 
where we agree the plaintiff would “prevail”: when the plaintiff obtains 
rescission of the contract, specific performance, an injunction, or a 
declaratory judgment. Today’s decision is not grounded on the fact that KB Home 
received no money damages, but rather on the fact that KB Home received nothing 
at all.43
            
The reason we focus on money damages is because KB Home focused on money 
damages. Had KB Home pursued nominal damages, rescission, specific performance, 
injunctive relief, or declaratory relief, that would be another case.44 But since KB 
Home’s sole goal at trial was actual damages, it cannot declare victory without 
recovering any, a point the dissent 
seems to concede: “Money damages may be indispensable in contract claims 
seeking money damages. . . .”45 This is exactly 
such a claim.
            
The jury’s verdict delivered KB Home a stand-alone finding on breach, but 
a breach-of-contract plaintiff who seeks nothing beyond economic damages cannot 
receive a judgment based on breach alone.46 In CU Lloyd’s of Texas v. 
Feldman, the court of appeals granted the plaintiff a partial summary 
judgment on liability and rendered judgment for him.47 We reversed, 
holding:
 
When the 
relief sought is a declaratory judgment, an appellate court may properly render 
judgment on liability alone. In this case, however, Feldman sought no 
declaratory relief and no evidence of damages was submitted or considered. . . . 
Thus, the court of appeals erred in rendering judgment for Feldman.48
 
Feldman 
was a summary-judgment case (where the plaintiff submitted no evidence of 
damages), and today’s case arises in a jury-verdict context (where the plaintiff 
submitted evidence of damages that the jury rejected), but the common thread is 
plain: Absent tangible relief, either monetary or equitable, a judgment on 
liability alone is improper. Where a party seeks only damages, as here, damages 
are a precondition to “prevailing.”
            
It is unconvincing to construe KB Home’s suit as one seeking declaratory 
relief. The DJA, like the contract, covers an action “to declare rights,”49 and as explained above, authorizes an 
award of attorney’s fees. A declaratory judgment, by its nature, is forward 
looking; it is designed to resolve a controversy and prevent future damages.50 It affects a 
party’s behavior or alters the parties’ legal relationship on a going-forward 
basis. Here, however, KB Home’s suit was decidedly focused on the past, seeking 
backward-looking money damages for prior breaches of contract. The dissent is 
right that “[a]n action to ‘declare rights’ is not an action for money 
damages,”51 but this case was never the former and 
always the latter. KB Home could have brought a declaratory-judgment action and 
“prevailed” (and thus recovered attorney’s fees) had the trial court rendered 
judgment on liability.52 It chose not to, opting instead to seek 
actual damages from the jury. The attorney’s-fees provision does not require a 
monetary recovery in every case, but KB Home made it necessary in this case by 
demanding only monetary, not declaratory, relief.
            
The dissent contends the judgment declares the parties’ rights, but the 
part of the judgment the dissent quotes from merely incorporates the jury 
verdict. KB Home’s petition sought jury findings on breach, damages and 
attorney’s fees. Taken at face value, the lawsuit asks the jury to “enforce the 
terms of this Contract”; it does not ask the court to declare rights. Intercontinental’s attorney noted as much at a post-trial 
hearing, stating that “an action to enforce a contractual provision” is “exactly 
what we’re dealing with here.” There are cases where parties who disagree over a 
contract’s meaning have asked the courts to declare their respective rights,53 but these cases are typically brought as 
declaratory-judgment actions. One exception is Feldman, which strengthens 
our decision today as illustrated in Feldman’s opening paragraph:
 
In this 
insurance case, we consider whether a court of appeals may properly render 
judgment on a party’s liability for breach of contract without evidence of 
damages and when no declaratory judgment has been sought. We conclude that it 
cannot . . . .54
 
            
Finally, the dissent resurrects an old version of Black’s Law Dictionary 
to define “prevailing party” as the one who prevails on the “main issue” of the 
case. The dissent then states there was “no doubt the main issue was defendant 
Intercontinental’s counterclaim,” and because the jury 
found for KB Home on that counterclaim, KB Home must be the prevailing party. 
But this analysis does precisely what the dissent accuses the Court of doing: It 
disregards the language of the contract.
            
The attorney’s-fees provision makes clear that the prevailing party is 
judged by "an action to enforce the terms of this Contract or to declare 
rights hereunder."55 The problem with the dissent’s analysis 
is that Intercontinental's counterclaim was not rooted 
in the parties’ written contract, but rather in an alleged separate oral 
agreement. Under the dissent’s “main issue” test, the interpretation of 
“prevailing party” in “this Contract” is controlled by the fate of a claim 
brought under a separate oral contract.
            
Displacing the parties’ agreed-to language with the dissent’s “main 
issue” analysis would yield an anomalous result: Plaintiff sues for $1 
million-plus, winds up empty-handed, but nonetheless “prevails.” That cannot be 
right. Focusing on what KB Home walked away with post-trial – no relief 
whatsoever – we cannot say it emerged the prevailing party.
V. Conclusion
            
Whether seeking attorney’s fees under Chapter 38 (which impliedly 
requires a claimant to first recover damages)56 or under this contract (where the jury 
denied the claimant’s sole basis for recovery), the bottom line is the same: As 
there was no award to the client, there can be no attorney’s fee award 
either.57 KB Home obtained nothing of value from 
its breach-of-contract lawsuit — certainly no judgment acknowledging compensable 
injury — and thus cannot recover its attorney’s fees under the contract: “to 
recover those fees, the [claimant] had to recover damages for breach of 
contract.”58 On these 
uncommon facts, we adopt a “no harm, no fee” rule, meaning a stand-alone finding 
of breach unaccompanied by any tangible recovery (either monetary or equitable 
relief) cannot bestow “prevailing party” status. As for Intercontinental, it 
waived any claim for attorney’s fees defending KB Home’s breach-of-contract 
claim by not submitting the issue to the factfinder. 
Accordingly, we reverse the court of appeals’ judgment and render judgment that 
KB Home take nothing.
 
                                                                                    
_______________________________________
                                                                                    
Don R. Willett
                                                                                    
Justice
 
 
 
OPINION DELIVERED: August 
28, 2009








[1] Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 
1997).

[2] Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).

[3] 
MBM Fin. Corp. v. Woodlands Operating 
Co., ___ S.W.3d ___, ___ (Tex. 2009) 
(construing the attorney’s-fees provision in section 38.001 of the Texas Civil 
Practice & Remedies Code, which specifies that attorney’s fees must be “in 
addition to the amount of a valid claim and costs”).

[4] 
Intercontinental had sold a majority of the Santa 
Clara lots to other developers, so KB Home dropped its specific performance and 
injunctive relief claims before trial and sought only lost 
profits.

[5] 
Specifically, the jury was asked: “Did 
Intercontinental Group Partnership fail to comply with the Santa Clara Lot 
Contract?” and separately “What sum of money, if any, if paid now in cash, would 
fairly and reasonably compensate KB Home Lone Star, L.P. for its damages, if 
any, that resulted from such failure to comply with the Santa Clara Lot 
Contract?”

[6] ___ S.W.3d ___, ___.

[7] 
MBM Fin. Corp. v. Woodlands Operating 
Co., __ S.W.3d __, __ (“Texas has long 
followed the ‘American Rule’ prohibiting fee awards unless specifically provided 
by contract or statute.” (citing Tony Gullo Motors 
I, L.P. v. Chapa, 212 S.W.3d 299, 310-11 (Tex. 2006) (“Absent a contract or 
statute, trial courts do not have inherent authority to require a losing party 
to pay the prevailing party’s fees.”))).

[8] Tex. Civ. Prac. & Rem. Code § 
38.001.

[9] 951 S.W.2d 384, 390 (Tex. 1997).

[10] See 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 2005).

[11] See, 
e.g., Dallas v. Wiland, 216 S.W.3d 344, 358 n.61 (Tex. 2007); Sw. Bell Mobile Sys., Inc. v. Franco, 971 
S.W.2d 52, 55-56 (Tex. 1998); Grounds v. Tolar 
Indep. Sch. Dist., 856 S.W.2d 417, 423 (Tex. 
1993).

[12] 482 U.S. 755, 757 (1987).

[13] Id.

[14] Id. at 
757-58.

[15] Id. at 
758.

[16] Id. at 
759.

[17] Id. at 
760.

[18] Id.

[19] 506 U.S. 103, 
111-12 (1992) (reviewing attorney’s fees awarded pursuant to 42 U.S.C. § 1988) 
(citations omitted).

[20] Id. at 113-14 
(noting that “the prevailing party inquiry does not turn on the magnitude of the 
relief obtained”).

[21] (Emphasis 
added).

[22] Cf. State 
Farm Life Ins. Co. v. Beaston, 907 S.W.2d 430, 437-38 (Tex. 1995) (rendering 
take-nothing judgment against party who recovered no damages on claim alleging 
violation of Insurance Code article 21.21, even assuming arguendo the party prevailed on the article 
21.21 claim).

[23] See 
Helms, 482 U.S. at 
760.

[24] Id.

[25] See 
Farrar, 506 U.S. at 
111-12.

[26] See 
id. at 111 (to 
be a prevailing party, “[w]hatever relief the 
plaintiff secures must directly benefit him . . . .”). It is 
difficult to conclude a breach-of-contract plaintiff has prevailed when the jury 
says the plaintiff was wholly uninjured and denies all requested relief. As the 
dissent recognizes, money damages are essential in contract claims seeking money 
damages (though not for contract claims seeking something else). ___ S.W.3d ___, ___. Every single court of appeals has 
likewise held that one of the required elements in a breach-of-contract suit 
seeking money damages is that the plaintiff was in fact damaged by the breach. 
Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App.—Houston 
[1st Dist.] 1997, no pet.); Fieldtech 
Avionics & Instruments, Inc. v. Component Control.com, Inc., 262 S.W.3d 
813, 825 (Tex. App.—Fort Worth 2008, no pet.); Roundville Partners, L.L.C. v. Jones, 118 
S.W.3d 73, 82 (Tex. App.—Austin 2003, pet. denied); Killeen v. Lighthouse 
Elec. Contractors, L.P., 248 S.W.3d 343, 349 (Tex. App.—San Antonio 2007, 
pet. denied); Reynolds v. Nagley, 262 S.W.3d 
521, 527 (Tex. App.—Dallas 2008, pet. denied); West v. Brenntag Sw., Inc., 168 S.W.3d 
327, 337 (Tex. App.—Texarkana 2005, pet. denied); Domingo v. Mitchell, 
257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied); Hovorka v. Cmty. Health 
Sys., Inc., 262 S.W.3d 503, 508-09 (Tex. App.—El Paso 2008, no pet.); 
Sullivan v. Smith, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no 
pet.); Bank of Am., N.A. v. Hubler, 211 S.W.3d 
859, 864 (Tex. App.—Waco 2006, pet. granted, judgm’t 
vacated w.r.m.); United Plaza-Midland, L.L.C. v. 
First Serv. Air Conditioning Contractors, Inc., 
No. 11-05-00382-CV, 2007 WL 4536525, at *7 (Tex. App.—Eastland Dec. 20, 2007, 
pet. denied) (mem. op.); Lake v. Premier Transp., 246 S.W.3d 167, 173 (Tex. App.—Tyler 2008, no 
pet.); Pegasus Energy Group v. Cheyenne Petroleum, 3 S.W.3d 112, 127 
(Tex. App.—Corpus Christi 1999, pet. denied); West v. Triple B Servs., L.L.P., 264 S.W.3d 440, 446 (Tex. App.—Houston 
[14th Dist.] 2008, no pet.).

[27] We said in a 
1998 decision discussing Farrar that two plaintiffs who proved 
retaliatory discharge under Texas law “prevailed” even though the jury awarded 
no money damages. Sw. Bell Mobile 
Sys. v. Franco, 971 S.W.2d 52, 56 (Tex. 1998) (per curiam). Unlike today’s case, however, one of the plaintiffs 
in Franco received equitable relief: reinstatement. As to that plaintiff, 
Franco correctly decided that he was a prevailing party. However, like KB 
Home in this case, the other Franco plaintiff received no relief 
whatsoever. As we noted in Franco, under the United States Supreme 
Court’s reasoning in Farrar, “‘the only reasonable fee’” when a plaintiff 
fails to prove damages is usually “‘no fee at all.’” Id. at 55-56 (quoting Farrar, 506 U.S. at 115). 
Also, our 1998 Franco decision predated the United States Supreme Court’s 
2001 decision in Buckhannon Board & Care Home, Inc. v. West Virginia 
Department of Health & Human Services, 532 U.S. 598, 603 (2001), which 
refined its earlier analysis and basically held: “no money judgment, no fees.” 
Accordingly, we disagree with Francon that a 
plaintiff who recovers no money and receives no equitable relief can be a 
prevailing party. Instead, a plaintiff must receive affirmative judicial relief 
to be considered a prevailing party.

[28] 971 S.W.2d at 56.

[29] Buckhannon, 532 
U.S. at 603-04.

[30] See Tex. 
State Teachers Ass’n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (“Where the plaintiff’s success on 
a legal claim can be characterized as purely technical or de minimis, a district court would be justified in 
concluding that” attorney’s fees should be denied.).

[31] Abraham Lincoln, Notes for 
Law Lecture (July 1, 1850), reprinted 
in 2 Collected Works of Abraham 
Lincoln 142 (John G. Nicolay & John Hay 
eds. 1894) (“Discourage litigation. Persuade your neighbors to compromise 
whenever you can. Point out to them how the nominal winner is often a real loser 
— in fees, expenses, and waste of time.”).

[32] But 
see Zapata Hermanos Sucesores, S.A. v. 
Hearthside Baking Co., 313 F.3d 385, 389 (7th Cir. 2002) (Posner, J.) (“[A] 
breach of contract is not considered wrongful activity in the sense that a tort 
or a crime is wrongful. When we delve for reasons, we encounter Holmes’s 
argument that practically speaking the duty created by a contract is just to 
perform or pay damages . . . .”) 
(citing Oliver 
Wendell Holmes, Jr., The Common Law 300-02 (1881) and Oliver W. Holmes, 
The Path of the Law, 10 Harv. 
L. Rev. 457, 462 
(1897)).

[33] See Goland v. Cent. Intelligence Agency, 607 F.2d 339, 356 (D.C. Cir. 1978) (declining to 
define “substantially prevail” in the Freedom of Information Act but doubting 
“that plaintiffs could be said to have ‘substantially prevailed’ if they, like 
Pyrrhus, have won a battle but lost the 
war.”). See also 
Farrar v. Hobby, 506 U.S. 103, 117, 119 (1992) (O’Connor, J., concurring) 
(noting that a plaintiff who achieves a purely technical victory, something 
Justice O’Connor labels “[c]himerical 
accomplishments,” has in reality “failed to achieve victory at all, or has 
obtained only a pyrrhic victory for which the reasonable fee is 
zero.”).

[34] In this 
Court, both the clerk’s and reporter’s records are partial.

[35] As its 
briefing makes clear, the only evidence Intercontinental introduced on 
attorney’s fees, and the only jury question it submitted on attorney’s fees, 
concerned “its separate counterclaim for breach of an 
oral agreement by Plaintiff” (emphasis in original), not its 
defense of KB Home’s breach-of-contract claim. Intercontinental concedes that 
since it lost on that affirmative claim, “the jury rightfully denied Defendant’s 
request for attorneys fees on that claim, and Defendant 
does not complain about that finding.”

[36] See Bocquet v. Herring, 
972 S.W.2d 19, 21 (Tex. 1998) (noting that reasonableness and necessity of fees 
are “question[s] of fact for the jury’s determination’”) (quoting Trevino v. 
Am. Nat'l Ins. Co., 168 S.W.2d 656, 660 (Tex. 1943)).

[37] Somewhat 
analogous to this contract provision is the attorney’s-fees provision in the 
Texas Declaratory Judgment Act (DJA): “[T]he court may award costs and 
reasonable and necessary attorney’s fees as are equitable and just.” Tex. Civ. Prac. & Rem. 
Code § 37.009. One court 
of appeals has recently noted that, “[o]n the face of this provision, it would 
appear that the trial court, not the jury, determines the amount of attorneys’ 
fees . . . .” Ogu v. C.I.A. Servs. Inc., No. 01-07-00933-CV, 2009 WL 41462, at *3 (Tex. 
App.—Houston [1st Dist.] Jan. 8, 2009, no 
pet.) (mem. op.). But, 
the court continued, “the amount of the attorneys’ fees 
is a question of fact for the jury to decide.” Id. (citing City of 
Garland v. Dallas Morning News, 22 S.W.3d 351, 367 (Tex. 2000)). We express 
no view on the matter.

[38] In Texas 
courts, the reasonableness of attorney’s fees is normally “a fact issue for the 
jury.” Scott A. Brister, Proof of Attorney’s Fees in Texas, 24 St. Mary’s L.J. 313, 349 (1993) (“Texas 
law treats attorney's fees as a fact issue for the jury rather than as a 
collateral matter usually determined by the court after the trial has been 
concluded and the loser determined.”). Obviously, parties can contract otherwise 
if they wish.

[39] Tex. Civ. Prac. & Rem. Code 
§ 38.004 (“The court may take judicial 
notice of the usual and customary attorney’s fees and of the contents of the 
case file without receiving further evidence in: (1) a proceeding before the 
court; or (2) a jury case in which the amount of attorney’s fees is submitted to 
the court by agreement.”).

[40] Tex. R. Civ. 
P. 301 (providing that the court’s judgment 
shall conform to the pleadings).

[41] Tex. R. Civ. P. 279 (“Upon appeal all independent grounds of recovery 
or of defense not conclusively established under the evidence and no element of 
which is submitted or requested are waived.”); cf. Wilz v. Fluornoy, 228 S.W.3d 
674, 676-77 (Tex. 2007) (per curiam); Hunt Constr. Co. v. Cavazos, 689 S.W.2d 211, 212 (Tex. 1985) 
(per curiam).

[42] Some might 
argue that not every lawsuit produces a winner (even cases that go to verdict); 
the parties could battle to what amounts to a draw, pay their own fees and 
expenses, and go home. Here, a jury finds there was breach but not injurious 
breach; the wronged plaintiff gets nothing and the wrongdoing defendant gives 
nothing. If “receiving no damages” means the plaintiff did not prevail, does 
“remitting no damages” necessarily mean the breaching defendant prevailed? When 
defining litigation success, some might argue that while relief is required for 
plaintiffs to prevail, a finding of “no breach” is required for defendants — 
that is, a desired finding on breach is insufficient for plaintiffs but 
indispensable for defendants.

[43] Citing cases 
from 1917 and earlier, the dissent also argues that KB 
is the prevailing party because it is entitled to nominal damages. ___ S.W.3d ___, ___. Nothing in the record shows that KB Home 
requested nominal damages in the trial court or that it appealed any non-award 
of nominal damages, so that scenario is simply not before us today. More to the 
point, as the Court makes clear in another case decided today, the modern Texas 
rule is that “nominal damages are not available when the harm is entirely 
economic and subject to proof (as opposed to non-economic harm to civil or 
property rights).” MBM Fin. Corp. v. Woodlands Operating 
Co., ___ S.W.3d ___, ___ (Tex. 2009). KB Home asked the jury to award 
damages to remedy an “entirely economic” harm that was “subject to proof”: lost 
profits.

[44] To this end, 
the dissent is mistaken in saying we are requiring parties to wait until they 
are damaged in order to seek a declaration of their respective 
rights.

[45] ___ S.W.3d ___ at ___.

[46] See CU 
Lloyd’s of Tex. v. Feldman, 977 S.W.2d 
568, 568 (Tex. 1998) (per curiam).
 

[47] Id. at 
569.

[48] Id. (internal 
citations omitted).

[49] Tex. Civ. Prac. & Rem. Code § 
37.003.

[50] See Bonham 
State Bank v. Beadle, 907 S.W.2d 465, 
467 (Tex. 1995) (“A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status 
of the parties and the controversy will be resolved by the declaration 
sought.”).

[51] ___ S.W.3d ___, ___.

[52] CU Lloyd’s 
of Tex. v. Feldman, 977 S.W.2d 568, 569 
(Tex. 1998) (“When the relief sought is a declaratory judgment, an appellate 
court may properly render judgment on liability alone.”).

[53] See 
Tex. Civ. 
Prac. & Rem. Code § 37.004; Allstate 
Ins. Co. v. Hallman, 159 S.W.3d 640, 641 (Tex. 2005); Brooks v. Northglen Ass’n, 141 S.W.3d 
158, 161 (Tex. 2004); CU Lloyd’s of Tex. v. Feldman, 977 S.W.2d 568, 569 
(Tex. 1998) (per curiam); Firemen’s Ins. Co. of 
Newark, N.J. v. Burch, 442 S.W.2d 331, 332 (Tex. 1968); Hoover v. Gen. 
Crude Oil Co., 147 Tex. 89, 90, 212 S.W.2d 140, 141 (1948).

[54] 977 S.W.2d at 568.

[55] (Emphasis 
added).

[56] MBM Financial Corp. v. Woodlands Operating 
Co., ___ S.W.3d ___ (Tex. 
2009).

[57] See 
id. at ___ (“a 
client must gain something before attorney’s fees can be 
awarded.”).

[58] Id. at 
___.