**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-17-00498-CV**

_____

**JENNIFER ANN WEBB, Appellant**

**V.**

**C.L. CRAWLEY JR. AND C.L. CRAWLEY JR., P.C., Appellees**

_____

**On Appeal from the 418th District Court**
**Montgomery County, Texas**
**Trial Cause No. 16-05-05473-CV**

_____

**OPINION**

This appeal arose following a trial that resulted in a take-nothing verdict on a lawyer's suit to collect a fee and the client's resulting counterclaims for malpractice and the alleged breaches of their fiduciary duties. Both parties appealed. The lawyer complains the evidence shows he had the right to recover on his claim for unpaid fees. The attorney's former client argues the trial court should have found she was

1

entitled to recover on her counterclaims. We conclude the parties' issues lack merit, so we affirm.

## I. Background

### A. *The Crawley Firm represents Jennifer Webb in her divorce*

In August 2012, Jennifer Webb retained C.L. Crawley, Jr. and his firm, C.L. Crawley, Jr., P.C. (the Crawley Firm) to represent her in a suit to divorce her husband, John Webb. Crawley, as Jennifer's attorney, sued John alleging Jennifer wanted a divorce.

The evidence in the malpractice trial shows that Jennifer hired Crawley to represent her in her divorce. But, as the case proceeded, the firm used Jennifer Ray, an attorney who had an office at the firm, to do most of the legal work in the divorce. In large part, Jennifer's breach of fiduciary duty claims focus on her allegation that the firm never disclosed that Ray was not an employee of the Crawley Firm. Ray began working on Jennifer's divorce at Crawley's request.

The testimony shows that Ray worked for the Crawley Firm's clients when requested to do so by the firm. When working for the firm's clients, Ray charged the firm an hourly rate of less than $100 per hour based on her agreement with the firm. The agreement allowed Ray to represent her own clients. On those matters, she set her own rate and billed her clients without any oversight from the firm.

Jennifer's fiduciary duty claims allege she thought Ray was an associate of the Crawley Firm because no one told her otherwise. When the firm billed Jennifer for its work, it billed Ray's time at $200 to $250 per hour, a higher figure than the rate Jennifer claims she would have paid Ray had she hired her without going through the firm.

Shortly after Jennifer hired Crawley, he asked Ray to help him with Jennifer's divorce. Ray progressively became more and more involved in Jennifer's case. At one point, Jennifer let Crawley know that she preferred dealing with Ray. In April 2014, Ray represented Jennifer in a mediation to resolve the disputes in the divorce. Several—but not all—disputes were resolved at mediation. For example, the parties settled how to divide the parties' marital estate. Jennifer gave John her community interest in their home. And Jennifer agreed to be responsible for paying the debt the couple owed the IRS for tax-years 2011 and 2013. Several other disputes—issues involving child support and visitation—could not be resolved and were decided at trial.

Ray appeared as Jennifer's lawyer at a four-day trial of the divorce. When the trial ended, the court orally pronounced its verdict. Jennifer was unhappy about the results she achieved in mediation, at trial, and about the delays that occurred between the trial and the date the court issued the decree.

3

In December 2014, Ray filed a motion for new trial in the divorce. The motion sought to set aside the judgment, mainly for two reasons. First, after the trial court signed the decree, the IRS informed Jennifer that she and John owed more for tax-year 2011 than the amount she relied on in the mediation when she had agreed to pay that debt. Second, Jennifer's motion alleges that after the trial court signed the decree, she learned John had agreed to sell the couple's home for a higher figure than the figure she relied on during mediation.

In January 2015, the trial court started the clock on the parties' rights to appeal the decree by denying the last of the parties' motions for new trial. Neither party appealed from the judgment, so it became final.

## B. Post-divorce, the Crawley Firm defends Jennifer against John's motion to enforce the decree

In May 2015, John filed a post-divorce motion to enforce the decree. In it, he alleged Jennifer had not complied with her obligations under the terms of the final decree. After Jennifer was served with John's motion, she contacted Ray and asked Ray to defend her in that matter. When Jennifer contacted Ray, she was still working for the Crawley Firm. So, Ray still considered Jennifer to be a client of the Crawley Firm. The firm, with Ray acting as Jennifer's lead lawyer, represented Jennifer at the hearing involving John's motion.

In October 2015, John filed a second, post-divorce motion to enforce. By then, Ray was no longer working for the Crawley Firm. Jennifer hired Ray (not Crawley or his firm) to defend her against John's second motion.

*C. Jennifer refuses to pay the outstanding balance of the Crawley Firm's bills*

In 2015, the Crawley Firm sent Jennifer several invoices, billing her for $13,656. When Jennifer failed to pay the invoices, Crawley sued Jennifer to collect the balance it alleged Jennifer owed the firm.[1] Crawley's suit, filed in February 2016, asserts three claims, one for breach of contract, a second alleging Jennifer breached a sworn account, and a third claiming Crawley was entitled to a quantum meruit recovery based on the unpaid fees.

*D. Jennifer files counterclaims*

In late February 2017, Jennifer filed counterclaims against Crawley and the Crawley Firm. In the counterclaims, Jennifer alleged Crawley and the Crawley Firm committed malpractice in the divorce case and breached their fiduciary duties to her while she was a client of the firm. Jennifer's malpractice theory centers on the manner the attorneys with the Crawley Firm handled her divorce. She claimed the attorneys committed malpractice by failing to advise her of the benefits she could have obtained had she pursued a family-violence finding against John. As to its

---

[1] The Crawley Firm assigned its interest in Jennifer's case to Crawley.

fiduciary duty claims, Jennifer alleged the Crawley Firm overbilled her for its work and failed to disclose that Ray was not an associate of the firm while it compensated her under an agreement favoring the firm.

In July 2017, Crawley and the Crawley Firm moved for partial summary judgment on Jennifer's claims. According to the motion, Jennifer's malpractice claim was barred by the two-year statute of limitations. And the motion argues Jennifer could not separate her fiduciary duty claims from her malpractice claim without violating the rule that prohibits fracturing claims.

In response to the motion, Jennifer argued several tolling theories applied to her malpractice claim, and she suggests the doctrines extended the deadlines governing her claims.[2] And Jennifer argued the rule against fracturing claims did not apply to her fiduciary duty claims, which she suggests relied on separate and distinct facts than did her claim for malpractice.

---

[2] *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) ("A defendant's fraudulent concealment of wrongdoing may toll the statute of limitations after the cause of action accrues."); *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) ("The discovery rule exception operates to defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim."); *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991) ("[W]hen an attorney commits malpractice in the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted.").

In mid-September 2017, the trial court denied Crawley and his firm's motion for partial summary judgment. A week later, the parties tried the claims and counterclaims to the bench. Seven witnesses, including Crawley, Jennifer, and Ray, testified in the trial. When the trial ended, the trial court ordered that each party take nothing on their claims. Both parties appealed.

## II.    Standard of Review

In their respective appeal and cross-appeal, both sides argue the evidence is legally and factually insufficient to support the trial court's take-nothing verdicts. We note the record on appeal includes no findings of fact or conclusions of law, nor does it show that any findings were requested.[3]

When findings of fact and conclusions of law are not filed or requested, we imply all the necessary findings needed to support the trial court's judgment, and we will uphold the judgment on any legal theory supported by the evidence.[4] In cases tried to the bench, the trial court acts as the factfinder.[5] As the factfinder in the case, the trial court has the right to judge the credibility of the witnesses, weigh the

---

[3] *See* Tex. R. Civ. P. 296.

[4] *See Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

[5] *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005).

7

testimony, and resolve any inconsistencies and conflicts in the evidence in reaching its verdict.[6] We review the trial court's implied findings of fact for legal and factual sufficiency, using the same standards applied in cases tried before juries.[7]

Here, Crawley and his firm had the burden to prove the various claims and affirmative defenses they raised in the trial. Likewise, Jennifer had the burden of proof on her counterclaims. Because each party had the burden of proof on their respective claims either for affirmative relief or raising affirmative defenses, each side must establish the trial court's verdict on their respective claims was incorrect as a matter of law or show the verdict is against the greater weight and preponderance of the evidence in the trial.[8]

---

[6] *Id.*

[7] *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991).

[8] *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)); (explaining that a party with the burden of proof on an issue must show in the appeal that the adverse finding on its issue is against the great weight and preponderance of the evidence admitted in the trial); *Raw Hide Oil & Gas, Inc. v. Maxus Expl. Co.*, 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo 1988, writ denied) (explaining that a legal sufficiency argument, made by the party complaining about an adverse finding on which the party had the burden of proof, requires the complaining party to show the party had a right to prevail on its claim as a matter of law).

In a legal sufficiency review, "the final test for legal sufficiency [is] whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review."[9] In contrast, in a factual sufficiency review, we consider and weigh all the evidence and will set it aside only if the evidence supporting the factfinder's finding is so weak as to make the verdict clearly wrong and unjust.[10] Stated another way, we are not authorized to set aside the findings the parties are challenging in their appeals unless the implied findings supporting the verdict are so contrary to the overwhelming weight of the evidence that the finding being challenged is clearly wrong and unjust.[11]

## III. Crawley's Cross-Appeal

### A. Crawley's breach of contract claims

Liberally construed, Crawley argues that—as a matter of law—the trial court was required by the evidence to find Jennifer breached her contract to pay fees. Crawley also raises a factual sufficiency argument, suggesting the take-nothing

---

[9] *See Cain v. Bain*, 709 S.W.2d 176, 176 (Tex. 1986) (per curiam).

[10] *Id.*

[11] *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain*, 709 S.W.2d at 176.

verdict on his claim for fees should be overturned because the verdict is contrary to the greater weight and preponderance of the evidence admitted in the trial.

Jennifer disagrees with both of Crawley's arguments as they apply to his claim for unpaid fees. She contends the evidence shows Crawley violated the billing arrangement she had with the Crawley Firm. And she contends the evidence allowed the trial court to decide the amount she paid the firm for its work represents a more than reasonable fee. To support these arguments, Jennifer points to various errors in the firm's bills. Crawley agreed there are some errors in the bills at trial. But he does not agree the firm overbilled Jennifer for Ray's work by charging Jennifer more than it paid Ray.

Under Texas law, "[a]n attorney may recover unpaid hourly fees for professional services rendered under the usual rules of contract law."[12] To prove a claim for attorney's fees, the attorney who sued must show (1) the attorney and the client had a valid agreement obligating the client to pay fees, (2) the attorney

---

[12] *See McRay v. Dow Golub Remels & Beverly, LLP*, 554 S.W.3d 702, 705 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

10

tendered performance, (3) the client breached the agreement by failing to pay a reasonable fee, and (4) damages resulted from the client's breach.[13]

"A fee is unconscionable if a competent lawyer could not form a reasonable belief that the fee is reasonable."[14] Because attorneys are prohibited by the Disciplinary Rules from charging or collecting an unconscionable fee, an attorney's remedy against a client is "subject to the prohibition against charging or collecting an unconscionable fee."[15] Deciding whether an attorney's fee is reasonable is usually a question of fact, so it generally must be resolved by the factfinder in the trial.[16] To determine whether a fee was reasonable, the factfinder—in this case the trial court—can consider evidence relevant to the representation between the attorney and the attorney's client.[17] These factors include, but are not limited to, the eight factors outlined in *Arthur Andersen & Co. v. Perry Equipment Corporation.*[18]

---

[13] *See Bank of Tex. v. VR Elec., Inc.*, 276 S.W.3d 671, 677 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Sullivan v. Smith*, 110 S.W.3d 545, 546 (Tex. App.—Beaumont 2003, no pet.).

[14] Tex. Disciplinary Rules Prof'l Conduct R. 1.04(a), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

[15] *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 561 (Tex. 2006).

[16] *Id.*

[17] *Id.* at 561 n.7.

As to his claim for fees, Crawley's primary argument is that Jennifer failed to present any competent evidence contradicting his testimony that the fees his firm charged were reasonable. He argues his testimony was clear, direct, and uncontradicted. And he concludes his testimony, together with the firm's itemized bills, which were also in evidence, established the reasonableness of the firm's fees.

To be sure, Crawley was an interested witness. And speaking generally, the uncontradicted testimony of an interested witness raises nothing more than an issue

---

[18] The *Arthur Andersen* factors are

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary Rules Prof'l Conduct R. 1.04(a)).

of fact that remains an issue to be decided by the finder of fact.[19] But Crawley points to caselaw explaining, under the facts in that case, how the testimony of an attorney on the reasonableness of attorney's fees can establish the fees charged were reasonable as a matter of law. That can occur if the testimony was "not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon."[20] This narrow exception applies "when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so."[21] But even then, depending on the testimony in the trial, the testimony may remain unreasonable, incredible, or allow the factfinder to question whether the testimony can be believed.[22]

In this case, the parties do not dispute that Jennifer signed a retainer agreement allowing Crawley's firm to represent Jennifer in her divorce. Nor do the parties dispute that the Crawley Firm defended Jennifer in the first (but not the second) of John's two post-divorce motions to enforce. And no dispute exists that Jennifer

---

[19] *See Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009).

[20] *Id.* at 546 (cleaned up).

[21] *Id.* at 547.

[22] *Id.* at 547-48.

refused to pay the full amount of the firm's bills or that Jennifer paid the firm around $50,600 in fees and expenses before she terminated her relationship with the firm.

Under Jennifer's agreement with the Crawley Firm, Jennifer agreed to pay Crawley $350 per hour for his time, $250 per hour for the time of the firm's associates, and $100 for the work of the firm's paralegals on her case. Under the retainer agreement, Crawley had the right to adjust the firm's hourly rates annually.

In 2012, the Crawley Firm billed for Crawley's services and a paralegal's services at the hourly rates listed in the agreement. That same year, the firm billed for Ray's services at $200 per hour. In late-January 2013, Crawley changed the rates, billing Jennifer $375 per hour for his services and $250 per hour for Ray's time. The firm continued to bill at the above rates until the firm's and Jennifer's relationship ended. Given the testimony about the manner the firm used Ray on Jennifer's case, as well as the fact the firm's agreement with Jennifer did not define *associate*, the trial court could have found Ray was an associate of the Crawley Firm for the work she performed on Jennifer's behalf.

At trial, Crawley explained the firm sent Jennifer invoices about once a month. According to Crawley, Jennifer never informed the firm she was disputing the firm's invoices until he sued to collect the fees she did not pay. The firm's invoices are itemized: they show who performed the work, the time for each task, and the hourly

14

rate the firm charged Jennifer for each person who billed her for working on the two matters she entrusted to the firm. In his testimony, Crawley acknowledged the firm's invoices contained several billing errors. He asserted, however, the errors total $295. According to Crawley, one of the errors occurred when the firm billed Ray's time at his hourly rate and billed a paralegal's time at an associate's rate. Crawley testified Jennifer owed the firm around $13,400 in unpaid fees after reducing the firm's bills by the errors he acknowledged were in them. According to Crawley, the firm's fees were reasonable and necessary for the work the firm did on Jennifer's files.

Crawley's testimony was not, however, *undisputed*. These are just some examples of the evidence that raised a fact issue about whether the fees were reasonable. First, the Crawley Firm billed Jennifer for Ray's time to draft a motion to enforce, a motion to compel a psychological evaluation, and to review an inventory and appraisal of the couple's marital estate. At trial, Ray testified she never drafted those documents. Second, Ray testified that four entries in the firm's February 2014 invoice showed the firm charged Jennifer for more time than she spent on those tasks. Third, given the *Andersen* factors and the evidence in this trial, the trial court had the discretion to reject Crawley's claim that his firm's entire fee was reasonable.

We are not persuaded by Crawley's arguments that the evidence is either legally, or factually, insufficient to support the judgment.[23]

### B. Crawley's sworn account and quantum meruit claims

To overturn the judgment denying Crawley's recovery on his sworn account and quantum meruit claims, Crawley argues the evidence is legally and factually insufficient to support the trial court's refusal to find in his favor on those claims. But these arguments, like his arguments on his breach of contract claim, fail to explain why the trial court could not find, as a reasonable factfinder, that Crawley failed to prove his claim for damages.

To recover in a suit based on a sworn account, the plaintiff must show the customer failed to pay the sworn account and prove the reasonable damages that resulted from the customer's failure to pay the account.[24] Crawley's claim relies on the same evidence of damages we have already discussed. For the same reasons we

---

[23] *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 764 (Tex. 2012); *Plas-Tex, Inc.,* 772 S.W.2d at 445.

[24] *See Ellis v. Reliant Energy Retail Servs.*, *L.L.C.*, 418 S.W.3d 235, 246 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (providing that a plaintiff may not recover on his sworn account claim unless "the amount of the account is 'just,' i.e., the prices charged are pursuant to an express agreement, or in the absence of an agreement, that the charges are usual, customary, or reasonable").

16

have discussed when addressing Crawley's breach of contract claim, the trial court could have also rejected his claim that Jennifer breached a sworn account.

The trial court could also find from the evidence that Crawley failed to prove his quantum meruit claim. "*Quantum meruit* is an equitable remedy which does not arise out of a contract, but is independent of it."[25] "Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished."[26]

In his brief, Crawley argues his quantum meruit claim is for the legal services Jennifer received on the motion for new trial filed in her divorce case and for the work the firm did defending Jennifer against the first of John's post-divorce motions to enforce. But here, the trial court could have reasonably found that $50,600 was a reasonable fee for the firm's work including its work on these two matters. On that basis alone, the trial court could have refused to find in Crawley's favor on his quantum meruit theory of recovery. Stated another way, the trial court could reasonably conclude Jennifer was not unjustly enriched based on her failure to pay the full fee, given that she paid the firm a reasonable fee for its work.[27]

---

[25] *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (cleaned up).

[26] *Id.*

We overrule the legal and factual sufficiency issues Crawley raised in his cross-appeal.

## IV.    Jennifer's Appeal

### A. *Jennifer's malpractice claim*

In her brief, Jennifer argues the judgment awarding her nothing on her malpractice claim should be reversed. According to Jennifer, the evidence admitted in the trial shows the Crawley Firm committed malpractice when it failed to recommend to her that she seek a family-violence finding against John in her divorce. Jennifer concludes that, had the firm recommended that strategy to her, she would have taken the advice, allowing her to achieve, she claims, a better result in her divorce.

In his response, Crawley asserts the two-year statute of limitations bars Jennifer's malpractice claim.[28] And Crawley contends the trial court could have found the two-year statute of limitations applied to and barred that claim.[29] As to

---

[27] *Id.*

[28] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a).

[29] *Id.*; *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 120 (Tex. 2001) (explaining that in a malpractice case, "[l]imitations generally begins to run when the cause of action accrues, which we have determined means when facts have come into existence that authorize a claimant to seek a judicial remedy").

18

limitations, Crawley suggests limitations on Jennifer's malpractice claim began running, at the latest, on January 8, 2015. That was the day the trial court denied the motion for new trial, not the day the trial court's plenary power over the decree expired. Crawley concludes that, by the time Jennifer counterclaimed for malpractice on February 26, 2017, the two-year statute had expired.

In response to those arguments, Jennifer suggests the trial court erred by failing to apply several rules that can sometimes toll or extend the statutory limitations period that applies to her claims.

### B. Limitations and malpractice claims

"To prevail on a legal malpractice claim, the plaintiff must prove the defendant owed the plaintiff a duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages."[30] An action against an attorney for legal malpractice is governed by the two-year statute of limitations.[31] Unless some doctrine applies to toll limitations, limitations begins to run on the plaintiff's cause of action when a wrongful act causes the plaintiff a

---

[30] *Stanfield v. Neubaum*, 494 S.W.3d 90, 96 (Tex. 2016) (cleaned up).

[31] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Apex*, 41 S.W.3d at 120.

*legal injury.*[32] This concept is commonly referred to as the legal-injury rule.[33] In her pleadings, Jennifer relied on the discovery rule, fraudulent concealment, and the Hughes Rule to argue that Crawley's defense of limitations did not bar her malpractice claims.

We briefly address these doctrines. "The discovery rule delays accrual until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury."[34] But the discovery rule is "a very limited exception to statutes of limitations[,]" as it is available only "when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable."[35] Although the discovery rule is a narrow exception to limitations, the rule has been applied to legal malpractice cases.[36] Generally, questions surrounding when a party's cause of action accrues for the purpose of limitations are decided as a matter

---

[32] *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018).

[33] *Id.*

[34] *Id.* (cleaned up).

[35] *See Horwood*, 58 S.W.3d at 734 (cleaned up).

[36] *See Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex. 1988); *see also Apex*, 41 S.W.3d at 120-21.

20

of law.[37] That said, when the discovery rule applies, questions about when the plaintiff's injury occurred generally entail "questions for the trier of fact."[38]

Still, the discovery rule does not require the defendant to show the injured party knew of the actual cause of her injury or show she knew how the injury could be cured.[39] Instead, "[o]nce a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know the specific cause of the injury[,] the party responsible for it[,] the full extent of it[,] or the chances of avoiding it."[40] So, what we must decide is whether the evidence allowed the trial court to find that Jennifer had knowledge of facts that put her on notice that the firm's work on her divorce caused Jennifer an injury more than two years before she sued for malpractice.

Fraudulent concealment is another tolling doctrine that operates to delay the limitations clock from starting to run when it applies. In case of fraud, the doctrine

---

[37] *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)).

[38] *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998).

[39] *PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 93 (Tex. 2004).

[40] *Exxon*, 348 S.W.3d at 207 (cleaned up).

21

delays the date limitations begins to run until the day "the fraud is discovered or could have been discovered with reasonable diligence."[41] To establish that the doctrine applies, the party that relies on the doctrine must prove the defendant wronged the plaintiff, knew the plaintiff had been wronged, and concealed the wrong to prevent the plaintiff from discovering her injury.[42]

The last tolling rule Jennifer relies on is known as the Hughes Rule. It is a special tolling rule, as it applies only to legal malpractice claims.[43] In general, the Hughes Rule tolls the starting date for limitations until the judgment in the case in which the malpractice occurred becomes final even if the plaintiff has reason to believe the attorney might have committed malpractice.[44]

Two policy reasons exist for the Hughes Rule. First, requiring clients to sue before the judgment on the underlying case is final could force the client to take "inherently inconsistent litigation postures in the underlying case and the client's malpractice case."[45] Second, deciding whether someone has a viable malpractice

---

[41] *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (cleaned up).

[42] *Marshall*, 342 S.W.3d at 67.

[43] *Hughes*, 821 S.W.2d at 157.

[44] *Id.*

[45] *Apex*, 41 S.W.3d at 121; *Hughes*, 821 S.W.2d at 156.

22

claim usually depends on the outcome the client ultimately achieves in the underlying litigation.[46] So, even when the Hughes Rule applies, it does not necessarily toll limitations until the client sues the attorney for malpractice.[47] Instead, the rule tolls limitations only until "all appeals on the underlying claim [have been] exhausted."[48] Consequently, we must also decide when the malpractice claim on Jennifer's divorce could have been exhausted.

### C. Analysis of the discovery and fraudulent concealment doctrines in Jennifer's case

Jennifer counterclaimed for malpractice on February 26, 2017. Because Jennifer raised the discovery rule in her pleadings, Crawley had the burden to prove that Jennifer suffered a legal injury by at least February 25, 2015, a date that is more than two years before Jennifer filed her malpractice claim. Here, the evidence allowed the trial court to find that Jennifer knew enough to put her on notice that she suffered a legal injury more than two years before she filed her counterclaim for malpractice.

---

[46] *Apex*, 41 S.W.3d at 121; *Hughes*, 821 S.W.2d at 157.

[47] *Hughes*, 821 S.W.2d at 157; *see also Apex*, 41 S.W.3d at 121-22.

[48] *Hughes*, 821 S.W.2d at 157.

For instance, there was ample evidence in the trial showing Jennifer was very unhappy with the results of her divorce even before the decree in the divorce became final. On November 14, 2013, more than four years before Jennifer filed her counterclaim for malpractice, she threatened to fire the Crawley Firm. In an email Jennifer sent Ray, Jennifer explained she was unhappy with the firm's work. The email states:

> I'm not the least bit happy with the way things are going at this point…I feel that you and [Crawley] haven't done the job I've hired you to do and now I'm being penalized for it…I haven't waivered from my initial position that the house, the kids and the dog should stay together. I'm not going to give up the house without at least attempting to fight for it…The only 2 other possibilities that I can see is to fire you and hope the judge gives me enough time to get another attorney[.]

When Jennifer discussed this email at trial, she said: "I did not feel that they were advocating for me; that they were doing what was in my best interest; that, to be quite honest, I didn't feel like they cared."

In August 2014, Jennifer sent the firm another email complaining about the firm's work. It states:

> You kept saying just settle, just settle, just settle, you don't want the judge to have to think about this, just settle.

> So I was convinced to agree to give [John] the following:

> $100,000 equity in the house (I kept saying the house was worth $399k and NO ONE would listen to me) - that's *unacceptable*.

$30,000 from my 401k- that's *inequitable*

$20,000 IRS debt was all to me despite the fact that the CPA has stated that **$23,832 of tax burden was directly attributable to his withdrawal of $52,961 from HIS IRA to pay HIS attorney fees- net affect I'm paying a huge portion of his legal fees – that's MAJOR *injustice*!**

He's walking away on YOUR recommendation with $150k and I've got nothing financially speaking except the balance of my 401k which doesn't help [m]e put a *miserable* roof over my kids heads…and I can't even get a *damned* divorce decree from a hearing that occurred April 25th!

I'm *disillusioned* and I want the damned decree done yesterday so that I can figure out how to get this undone before he sells the house and blows the proceeds.

Other evidence in the trial supports the trial court's implied finding that Jennifer was on notice of her legal injury more than two years before she sued for malpractice. For example, the trial court heard that Jennifer is a licensed lawyer: she was licensed even before she sued John for divorce.

On this record, the trial court could have reasonably determined that Jennifer suffered a legal injury more than two years before she counterclaimed against Crawley and his firm for malpractice. Simply put, the evidence supports the trial court's implied findings that the discovery rule and the doctrine of fraudulent

concealment did not prevent limitations from barring Jennifer's claim for malpractice.[49]

*D. Analysis-Hughes Rule*

We also conclude the trial court could reasonably find that the Hughes Rule did not save Jennifer's malpractice claim from Crawley's limitations defense. The Crawley Firm completed working on Jennifer's divorce on February 9, 2015, the date the decree in Jennifer's divorce became final. Under the Hughes Rule, the clock on Jennifer's malpractice claim started running on February 11, 2015.[50]

Jennifer suggests the Hughes Rule tolled limitations on her claim until the date the Crawley Firm completed its work defending her against John's post-divorce, motion to enforce. But Jennifer's malpractice theory complains about the work the

---

[49]*See Exxon*, 348 S.W.3d at 209 ("Knowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it.") (cleaned up).

[50] Neither party appealed from the decree the trial court signed in Jennifer's divorce. Because motions for new trial were filed after the trial court signed the decree, the trial court still had plenary power over the decree for a period of ninety days after it signed the decree on October 30, 2014. *See* Tex. R. App. P. 26.1(a). Thus, even if the grace period for filing an appeal applies in accounting for the Hughes Rule's tolling doctrine, a matter we need not decide, Jennifer needed to pursue an appeal by no later than February 11, 2015. *See* Tex. R. App. P. 26.3.

firm did in Jennifer's divorce: she did not sue Crawley or his firm over the manner the firm defended her against John's post-divorce, motion to enforce.

In cases involving post-divorce motions, which are motions filed after the decree has become final, the post-divorce action is treated as a different case from the case involving the couple's divorce.[51] Treating the cases as separate cases makes sense, since post-divorce actions cannot alter the terms in the final decree.[52] Even with the benefit of the Hughes Rule, Jennifer could not wait more than two years after February 11, 2015, to sue Crawley and his firm for malpractice. But Jennifer waited until February 26, 2017 to file her counterclaim, and by then, limitations barred her claim.[53] We conclude Jennifer's arguments suggesting the Hughes Rule saved her malpractice claims lack merit.

### E. Analysis-fiduciary duty claims

Last, Jennifer argues the trial court erred by rejecting her claim that Crawley and his firm breached the fiduciary duties they owed her as a client. According to

---

[51] *See* Tex. Fam. Code Ann. §§ 9.001(b), 9.006(c) (Supp.).

[52] *See* Tex. R. Civ. P. 329b(e); *Brennan v. Manning*, No. 07-06-0041-CV, 2007 Tex. App. LEXIS 2838, at *6 (Tex. App.—Amarillo Apr. 12, 2007, pet. denied); *Washington v. Georges*, 837 S.W.2d 146, 148 (Tex. App.—San Antonio 1992, no pet.).

[53] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)

Jennifer, Crawley and his firm breached their fiduciary duties to her by (1) billing for Ray's services without disclosing that Ray was not a payroll employee of the firm and by (2) billing for services Jennifer either did not request, the firm failed to complete, or which had no value. Jennifer's fiduciary duty claims focus on her billing relationship with the firm, while Jennifer's malpractice claim focuses on the advice Jennifer's attorneys gave her during her divorce. According to Jennifer, her fiduciary duty claims rely on a different set of facts than those she relied on to prove her malpractice claim.

In response, Crawley argues that all of Jennifer's claims depend on the same facts. He concludes Jennifer should not be allowed to fracture what he claims is essentially a malpractice claim into multiple claims when all claims are based on the same facts.

Under Texas law, a fiduciary relationship exists between attorneys and their clients.[54] Under the rule prohibiting the fracturing of claims, a client may not sue an attorney on a fiduciary duty claim when the client's claims are based on the same facts.[55]

---

[54] *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005).

[55] *Goffney v. Rabson*, 56 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2001, writ denied). ("Texas law, however, does not permit a plaintiff to divide or fracture her legal malpractice claims into additional causes of action.").

28

The record shows that Jennifer's breach-of-fiduciary duty claims are based on different facts than the facts she relied on to support her malpractice claim. Jennifer's fiduciary duty claims center on three things, (1) the firm's failure to disclose Ray's employment status with the firm, (2) the manner the firm billed Jennifer for Ray's time, and (3) the firm's billing practices for its work. The facts needed to prove these claims are separate and distinct from the facts Jennifer used to claim the firm should have advised her to seek a family-violence finding in her divorce. Stated another way, Jennifer's malpractice claim relates to the advice (or lack of advice) Jennifer received in her divorce. But Jennifer's breach of fiduciary duty claims address the firm's billing practices—not the firm's advice. Because Jennifer's claims are based on different facts, we reject Crawley's argument they cannot be asserted as separate torts.

Next, we address the merits of Jennifer's complaints about the trial court's failure to find in her favor on her breach of fiduciary duty claims. To prevail on a breach of fiduciary duty claim, the plaintiff must prove (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages.[56] Ordinarily, an attorney breaches a fiduciary duty owed to a client when the attorney improperly

---

[56] *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

29

benefits from the attorney-client relationship by, among other things, failing to disclose conflicts of interest, placing personal interests above the client's interests, engaging in self-dealing, and misrepresenting facts.[57]

Equitable remedies may be used to remedy such claims, and Jennifer sought an equitable remedy here by asking the trial court to require the firm to disgorge the fees she paid the firm. Sometimes, the prevailing party on a breach of fiduciary duty claim may receive monetary relief without proving it suffered monetary damages.[58] Upon finding that a breach of fiduciary duty occurred, a trial court may order a forfeiture of some or all of an otherwise reasonable fee if a "clear and serious" breach of a fiduciary duty occurred.[59] When a forfeiture of fees is the remedy that has been sought, the factfinder must resolve "whether or when the misconduct complained of

---

[57] *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App.—Dallas 2004, no pet.) ("The essence of a claim for breach of that duty involves the 'integrity and fidelity' of an attorney and focuses on whether an attorney obtained an improper benefit from representing the client."); *see also Goffney*, 56 S.W.3d at 193.

[58] *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010) ("[C]ourts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty."); *see also Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999) ("A client need not prove actual damages in order to obtain forfeiture of an attorney's fee for the attorney's breach of fiduciary duty to the client."); *Parker*, 514 S.W.3d at 221 (providing that a plaintiff need not necessarily prove causation and that she suffered actual damages when seeking an equitable remedy for an attorney's breach of fiduciary duty).

[59] *Burrow*, 997 S.W.2d at 237.

occurred, the attorney's mental state at the time, and the existence or extent of any harm to the client."[60] The elements of a fee forfeiture claim require the trial court to decide (1) whether the attorney committed a "clear and serious" breach of the duty owed the client, (2) whether forfeiture or disgorgement of fees is appropriate based on the facts of the case, and (3) if fee forfeiture is appropriate, the amount that must be disgorged or forfeited from the attorney's fee.[61]

For the purposes of Jennifer's appeal, we will assume (without deciding) the trial court erred by failing to find a breach of fiduciary duty occurred. In her appeal, Jennifer argues the proper remedy for the breach required the court to order the firm to disgorge its entire fee.

But, we have already explained why the trial court could have concluded the amount Jennifer paid the firm for its work, $50,600, represented a reasonable fee. While it was undisputed that the firm billed Jennifer for Ray's work at a rate higher than the contract rate at which Ray charged the firm, Crawley explained the reasons that firms charge clients more than its attorneys are paid. He testified the firm's hourly rates include overhead, which represents the various expenses the firm incurred in doing business. And Crawley explained the firm paid Ray for the hours

---

[60] *Id.* at 246.

[61] *Id.*

she billed the firm regardless of whether the firm's clients ultimately paid the firm's bills.

Even more, Ray's testimony reflects that if Jennifer had hired her directly, Ray likely would have charged her a similar if not identical hourly rate as the one Jennifer was charged by the firm. During the trial, Ray testified she billed her own clients at hourly rates of between $200-$250 per hour. As the factfinder, the trial court had the discretion to find that Jennifer would have still hired the firm to represent her and agreed to the rates reflected in the firm's bills even had she known that Ray was working for the firm on an as-needed, contract basis.

As explained by the Texas Supreme Court, the remedy of forfeiture "is not justified in each instance in which a lawyer violates a legal duty, nor is total forfeiture always appropriate. Sometimes, violations of fiduciary duties are either inadvertent" or do not cause a significant harm to the attorney's client.[62] Even if we assume Jennifer established Crawley and his firm breached the fiduciary duties they owed Jennifer, the trial court could have nevertheless determined that Jennifer paid the firm a reasonable fee or that she would have paid the same fee even had she known about Ray's contract with the firm. For these reasons, we conclude the trial

---

[62] *Id*. at 241.

court could reasonably reject Jennifer's theory that equity required a remedy for any violations of the duties it owed Jennifer to bill her a reasonable fee.

We hold Jennifer failed to establish the evidence required the trial court to render judgment in her favor on her claims. We further conclude the take-nothing verdict rejecting Jennifer's claims for relief is a verdict that is not contrary to the overwhelming great weight and preponderance of the evidence. For these reasons, we overrule Jennifer's issues.

## V. Conclusion

The trial court's judgment on all claims reflects a reasonable resolution of the dispute based on the evidence admitted in the trial. Neither party established a right to prevail on their claims as a matter of law. The trial court's judgment is affirmed.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 29, 2019
Opinion Delivered December 12, 2019

Before McKeithen, C.J., Kreger and Horton, JJ.

33